## CALVIN C. MASON v. ISRAEL KELLOGG.

*Notice to a Covenantor of Warranty to Join in Defense to an Action of Ejectment—Damages under a Covenant of Warranty.*

A deed contained a proviso that the right of possession be reserved to the grantee's mother and sister as well as to himself, for use as a homestead until he should become of age. *Held* that the deed gave him such an interest as entitled him to sue upon the covenant of warranty.

If a covenantor of warranty is notified to appear and defend in any action involving the validity of the title, an adverse judgment in such action will bind him when sued upon the warranty. But it does not of itself create any right of action against him.

Judgment in ejectment is *prima facie* but not conclusive evidence against a covenantor of warranty if it affirmatively shows a state of facts amounting to a breach of the warranty.

The notice to be given a covenantor of warranty to appear and
     defend in any action involving the validity of the title he has
     conveyed must be in writing; though formal notice is waived,
     perhaps, by appearance and action without objecting to the want
     of it.

All notices in legal proceedings must be written.

A judgment for value in an action of ejectment is a sufficient ouster
     on which to ground an action for breach of warranty.

Ten years actual possession under an administrator's deed is *prima
     facie* evidence of the regularity of title, and in an action upon
     a covenant of warranty neutralizes the *prima facie* showing
     which a judgment in ejectment establishes against the covenantor.

Testimony given on a trial in ejectment cannot be introduced after
     the death of the witness, in an action between other parties in
     interest upon a covenant of warranty.

Where the evidence is evenly balanced the finding of the court will
     not be questioned.

Improved land was sold with warranty. Recovery was afterward
     had in ejectment for the value of the naked lot at the time of
     recovery. *Held* that in an action on the covenant the damages
     could not exceed the value of the lot alone at the date of the
     covenant.

Error to Kalamazoo.   Submitted October 30, 1877.
Decided January 15, 1878.

Assumpsit on a covenant of warranty.   The facts are
in the opinion.

*Edwards & Sherwood* for plaintiff in error.

*Arthur Brown* for defendant in error.   Notice to a
covenantor of warranty to appear and defend in an action
involving the title must be accompanied by a surrender
of the management of the case to him, *Collingwood v.
Irwin,* 3 Watts, 310; *Paul v. Witman,* 3 W. & S., 410,
and must be given before appearance is entered, *Middle-
ton v. Thompson,* 1 Spears (S. C.), 69.

Graves, J.   Mason sued Kellogg on the covenant for
quiet enjoyment contained in Kellogg's deed to Mason's
predecessor in title, Mary Ann Phillips, for lot sixteen of
Sill's addition to Kalamazoo.   The circuit judge ordered

a finding for the defendant and the jury so found.  Mason then brought error.

In some of its aspects the case has an importance beyond its bearing upon the interests of the immediate litigants.    Before proceeding to ascertain the state of the case in point of law, a reference is necessary to several of the main facts.    March 17th, 1849, the property was owned by one Healey, and he then conveyed to John H. Campbell, and in the succeeding April Campbell died seized and intestate.    He left a widow, Caroline Campbell, and two children, Franklin and Sabina Campbell, his only heirs at law.    The widow subsequently married again, and has since died.    Franklin, who is now thirty-seven, removed to California at nineteen, and Sabina intermarried with one Sterling.    August 22d, 1853, the probate court of Kalamazoo county upon his petition appointed one William T. Campbell administrator on the estate of said John H. Campbell.    September 22d, 1854, the administrator reported to the court that he had sold lot sixteen of Sill's addition on the 18th of the same month under a license of July 24th, 1854, therefor, to George Thomas Clark for $200.    September 25th, 1854, the court entered an order confirming the sale and directed a conveyance to Clark, and on the 8th of the following December a deed was given by William T. Campbell as administrator to Clark, and apparently to complete the public sale.    On the next day, namely, December 9th, 1854, Clark made a deed of the property, and purported to convey it to said William T. Campbell in his private character for $200.    July 25th, 1855, William T. Campbell conveyed to Tobias Johnson for an expressed consideration of $3,050, and on March 19th, 1862, Johnson conveyed to the defendant Kellogg for $3,500 as stated in the deed.

May 7th, 1864, Kellogg conveyed to Mary Ann Phillips for the named consideration of $2,400.    September 30th, 1865, Mary Ann Phillips conveyed to Calvin N. Mason for $3,000, and March 12th, 1866, Calvin N. Ma-

son and his wife Henrietta Mason united in a deed to their son the plaintiff, who was then a minor, for a recited consideration of $3,000. The deed from Kellogg to Mrs. Phillips and from Mrs. Phillips to Calvin N. Mason contained the usual short covenants of seizin, against incumbrance and for quiet enjoyment, and that from Calvin N. Mason to his son the plaintiff contained the covenants of seizin and against incumbrance, but in place of the covenant for quiet enjoyment it contained a covenant of warranty. It contained also immediately after the words describing the lot, this specific provision: "provided the right of possession to the whole of said premises is hereby reserved for the use as a homestead for the said Henrietta Mason and her children, Calvin C. and Emily Mason, until said Calvin C. Mason shall arrive at the age of twenty-one years, or until the death of said Henrietta Mason, within that period. Mrs. Mason appears to be living, Emily was of age September 3d, 1872, and the plaintiff Calvin C. August 9th, 1876. This suit was commenced September 9th, 1875.

December 12, 1871, Franklin Campbell conveyed whatever interest he had in the lot in question to his sister Sabina Sterling.

February, 1872, Mrs. Sterling brought ejectment against Henrietta Mason, Calvin C. Mason and Emily Mason. The same counsel who appear for the plaintiff here then represented the defendants. September 27th, 1872, a plea of the statutory general issue was filed accompanied by a notice of special matter. This was in place and by way of amendment of previous pleadings. The notice set up that defendants would prove and insist that the lot claimed was formerly owned and possessed by John H. Campbell; that he died leaving it a portion of his estate; that William T. Campbell was appointed administrator of such estate; that in the course of administration said administrator was duly licensed to sell the lot, and pursuant thereto and in accordance with the statute did sell and convey it to George Thomas Clark;

that defendants claim title through such sale; that more than five years had elapsed since said sale to Clark at the commencement of the ejectment; that the plaintiff claimed title under said John H. Campbell, and that her cause of. action did not accrue within five years next before the commencement of suit.    At the same time a claim for improvements was filed with a request for a finding of the addition to the value of the lot caused thereby.  September 30th, 1872, the plaintiff in ejectment filed her request for a finding of value without improvements.

February, 1875, the cause was tried, and on the 24th "the jury found defendants guilty of unlawfully withholding possession from the plaintiff and that she was entitled to the property in fee."    They also found that the lot was enhanced in value by improvements $1,650, and that it would have been thus worth $1,200 without the improvements, and in answer to a specific question they found in effect that the purchase apparently made by Clark at the administrator's sale was actually a purchase by the administrator himself in his individual behalf.

February 26, 1875, the court entered judgment on the verdict.    It recited all the findings except the answer to the specific question, and adjudged that the plaintiff recover possession of the defendants on her paying into court $1,650, the amount of the improvements with interest thereon, at any time within a year from the date of the judgment and that she thereupon have a writ of possession according to the form and effect of the recovery.    And further that if she should at the same or the next term elect on record to abandon the lot to the defendants at its value as found, that in that event she recover against the defendants $1,200 with her costs and charges to be taxed, and that the judgment be and continue a lien on the lot according to the statute.    The costs were taxed at $131.57.

May 20th, 1875, the plaintiff filed her election to aban-

don the lot at the value found by the jury, $1,200. August 2d, 1875, execution was issued on the judgment and was levied on the lot August 24th, 1875. The record discloses that the lot was sold on the execution to Emily Mason for $1,425.50 October 16th, 1875, but this was more than a month after this suit was commenced.

In view of the peculiarities of the case it is deemed advisable to notice several questions brought under discussion although they are not material to the result reached.

A point is made by defendant that the plaintiff is not in a situation to complain of any rulings adverse to him, because, as is said, it appears affirmatively he had no right of action when the suit was commenced, and he grounds this claim on the force and effect which he ascribes to the particular provision in the plaintiff's deed concerning the temporary right of possession of the lot.

He contends that this provision created a distinct right of possession and enjoyment, which had not expired, and hence the plaintiff had not come into any right liable to disturbance within the protective scope of the covenant. The point is confined to the right of action and does not apply to the measure of recovery.

We shall not refine on the clause in question in the deed. We think the plaintiff immediately acquired an interest through the deed to which the old covenant applied.

The grantors do not appear to have retained any thing. The grant was to the plaintiff in fee with a qualified use to him and his mother and sister for a term limited to a few months, and which might be cut short by the occurrence of his mother's death sooner. Let it be admitted that plaintiff and his mother and sister were vested with a right to the land itself under this clause. Shep. Touch., 93; Co. Litt., 4 b.; *Green v. Biddle*, 8 Wheat., 1, 76. Let it be conceded that in virtue of being entitled to the described special kind of use and enjoyment for the time

limited, they were by force of the deed and the statute (Comp. L., §§ 4116, 4118) vested for such time with a legal estate of the same quality and duration and subject to the same conditions as the beneficial interest as meant by the grantor; and still the plaintiff had all the estate and right not embraced by the clause in question and likewise the right under that clause to present possession and enjoyment in common with his mother and sister. His interest was severable from theirs. It was much more extensive. It covered every thing except the trifling matter of their right to use and enjoy with him in the special mode limited up to August 9th, 1876. That he had an interest and present right capable of being so disturbed and infringed as to give him an immediate right of action upon the covenant cannot be doubted. And the nature of his right and interest entitled him to sue alone. Rawle on Covenants, 599; Barbour on Parties, 33.

The plaintiff's counsel argues that the court erred in ruling out his efforts to show by Mr. Turner who aided in trying the ejectment suit on the part of Mrs. Sterling, that she made claim of title paramount to that derived from Kellogg.

The first question put to Mr. Turner was held improper, but simply on account of its form. An exception was taken. It is not certain that the court was mistaken in thinking the question was not in proper form, but it is certain that in judging of the form only, the court exercised a discretion vested by law in the trial judge, and does not appear to have prejudiced the plaintiff. Immediately after this ruling the counsel, intending apparently to conform to it, varied the form of the question and then, upon objection by opposing counsel, the court ruled that it was premature, and suggested the necessity of first establishing another fact. Other testimony was then introduced bearing on the fact mentioned by the court and the subject was again brought up by a question and

thereupon the court at once observed in terms, "That question is passed upon." The matter was immediately dropped. No explanation was offered or any thing further insisted on and no exception was taken to either of the latter rulings. The plaintiff's counsel acquiesced in both. We see nothing in these proceedings we have any right to revise.

Where a title guarded by covenant is assailed by action upon a ground which, if adjudged valid, would involve infringement of the covenant, the holder of such title on being so sued may give proper notice to the covenantor and require him to defend; and having done this, if the case in which notice is given results adversely to him and he thereupon sues on the covenant he will be relieved from making proof, except by the judgment itself, of the truth and force of what was there adjudged. But the giving of notice is no part of his ground of action; neither is it a necessary prerequisite to his recovery on the covenant. He may still maintain his action, but without the advantage secured by notice, the effect of that proceeding being not to create or help create a cause of action or supply any preliminary in law to the right to institute suit on the covenant, but to place the covenantor in such relation to the ejectment case or primary action as that the judgment in it, if adverse, will conclusively bind him in the suit on the covenant.

If, as supposed in the view now being taken, the thing determined in the prior case is the same thing which works the breach of covenant complained of, then, whether the covenantor was well warned or not, the judgment is a piece of lawful evidence in the action upon the covenant, the difference being that if it turn out that the covenantor was not adequately warned,—was not in substance a party,—the judgment, instead of being final as against him, is merely *prima facie* evidence of the validity of the title it purports to validate, and is disputable.

But another consideration occurs in this connection.

When the judgment in the prior case is brought forward in the action on the covenant, it is under an assumption that it actually adjudged that to be true, which being so, is the breach of covenant sued for.     Because if it did not it would not be pertinent.     Hence, unless the record shows affirmatively, which can rarely happen with us, that such was the case, the point must be shown by other proof.     Without such proof the relevancy and force of the judgment in the pending controversy could not appear.     *Moore v. Bostwick,* 23 Mich., 507; *Lyman v. Becannon,* 29 Mich., 466; *Johnson v. Morse,* 11 Allen, 540; *Sawyer v. Woodbury,* 7 Gray, 499; *Miles v. Caldwell,* 2 Wall., 35; *Davis v. Brown,* 94 U. S., 423; *Burt v. Sternburgh,* 4 Cow., 559; *Doty v. Brown,* 4 Comst., 71; *Dunckle v. Wiles,* 5 Denio, 296; *Kelly v. Dutch Church,* 2 Hill, 105.

The plaintiff claimed below that immediately upon the commencement of the ejectment suit he and his co-defendants therein notified Kellogg thereof and requested him to assume defense, and that he actually took part in defending.     These claims the defendant controverted.

That no notice was given in writing was conceded, and it was virtually admitted at the same time that soon after the ejectment was commenced, and at various times during the progress of the cause, Kellogg conversed with the attorneys of the defendants therein as to the course to be pursued, and took an interest in the defense. Considerable testimony was given by each side on this branch of the case and it was quite conflicting.     It was offered upon the point of his having been distinctly and explicitly notified in the sense in which that proceeding is now understood, and it was also offered in regard to the nature and extent of his connection with the conduct and management of the defense.

The counsel for the defendant insisted below and insists here that parol notice is not good.     The point has not been adjudged in this State, and the proper practice in this particular is to be now settled.     On looking abroad

we find precedents on both sides. We allude to proceedings in regard to real estate and not to cases concerning personal property. There are ample grounds for making a distinction between these classes. Upon full consideration we think the dictates of policy, the force of analogy and weight of reason require the notice to be in writing. Our policy has always favored written memorials of titles to real estate, and in view of the effect which the law attributes to this proceeding it is sufficiently near being a fact of title to be within the policy. It bears a striking analogy to the ancient process of voucher and summons, and similar proceedings in some of our states (Stone on Real Actions, 136 to 138, and form of summons in appendix, being No. 44), and of course such proceedings could not be verbal. Then the giving notice is virtually a step, and an important step, in the cause. It contemplates the introduction of the covenantor and the entire prosecution of the defense in complete accordance with his views and under his direction. It is essentially a legal proceeding and it is a well recognized general rule that every notice of that character must be in writing. *Gilbert v. Columbia Turnpike Co.*, 3 Johns. Cas., 107; *Lane v. Cary*, 19 Barb., 537; *McEwen v. Montgomery County Mut. Ins. Co.*, 5 Hill, 101.

Every reason proper to be urged for this rule must apply with great force to the notice in question. If a mere verbal notice is allowed to answer, a wide door is opened to mistake, misapprehension and misunderstanding and all manner of uncertainty, and the practice does little less than invite expensive and perplexing contests about a matter which ought to be as simple and certain as the service of a declaration. The controversy which has appeared in this case may be expected to be repeated frequently, and important interests connected with the title to real property be made to turn on the uncertain issue of such dubious disputes.

The dissenting opinion of Judge Bronson in *Miner v. Clark*, 15 Wend., 425, is replete with strong sense, and

it shows in a few words the propriety of the practice we approve.

Had due notice been given in writing in the suit brought by Mrs. Sterling, all the contention, confusion and uncertainty which have arisen, not only concerning the fact of notice and its aptness to make known distinctly all the particulars proper for it, but concerning also Kellogg's actual connection with the defense and his influence upon it, would have been entirely avoided.

But his true position as an actor about the case could possess no importance whatever except upon the assumption that he was not duly notified, and the controversy about it with all its uncertainty has arisen only as a natural consequence of the reliance placed upon conversation as a medium of notice, and is one of the very mischiefs which go to prove the unsoundness of the practice which gives sanction to such a notice.    The reason which requires the rejection of the one applies to the other.    We are therefore of opinion that the want of proper notice is not obviated by a case made up of indeterminate and conflicting showings in regard to Kellogg's actual connection with the defense and the extent of it.

Had it appeared beyond fair controversy that Kellogg was reasonably apprised that it was in his power to assume the entire defense and exercise complete control of it, and that not protesting want of due notice he actually accepted the opportunity and did what he chose, then I should say he waived formal notice and subjected himself to the same extent that he would have done if properly notified.,    *Taylor v. Clemson*, 11 Clark & Fin., 610; *Parish v. Gilmanton*, 11 N. H., 293.

In this, however, I assume to express only my own opinion.    It is sufficient that the record before us presents no such case.    We cannot agree with defendant's counsel that the ejectment proceedings were intrinsically inappropriate to denote a breach of the covenant.

The findings and judgment pursued the general law as

modified by the provisions for the benefit of occupying claimants. The incidents of the main determination, no less than that determination itself, were in accordance with law, and surely the Legislature in devising those proceedings for the benefit of grantees did not intend to diminish their security under their covenants for quiet enjoyment, and yet such would be the consequence of the position of defendant's counsel. The judgment constituted a recovery against the title Mason held, and it established a right he could not resist. It was the assertion by law of an overbearing hostile claim, and was a disturbance of his right of enjoyment. He did not walk off of the lot; neither was he taken off. Under the remedial provisions before mentioned he continued in the same place. He was, nevertheless, immediately and expressly ousted by force of the judgment, of a large part of the estate.

The separation, it is true, was not by metes and bounds or by fractional distinctions, but by valuation. Mrs. Sterling succeeded in getting all but the improvements. If a conflagration had swept them away, nothing would have been left.

The principle is clear enough. Physical expulsion from the lot or some part of it was not necessary. Compulsory surrender of a part of the value must surely be enough, and so much the judgment accomplished. Less has been deemed sufficient in well considered cases. *McGary v. Hastings,* 39 Cal., 360: 2 Amer., 456; *Drew v. Towle,* 30 N. H., 537; *Poyntell v. Spencer,* 6 Penn. St., 254; *Sterling v. Peet,* 14 Conn., 254; *Hamilton v. Cutts,* 4 Mass., 350; *Woodward v. Allan,* 3 Dana, 164; *Home Life Ins. Co. v. Sherman,* 46 N. Y., 370; *Cowdrey v. Coit,* 44 N. Y., 382. See also *Loomis v. Bedel,* 11 N. H., 74; *Turner v. Goodrich,* 26 Vt., 709; *Brown v. Dickerson,* 12 Penn. St., 372; *Hanson v. Buckner,* 4 Dana, 254; *Whitney v. Dinsmore,* 6 Cush., 124; *King v. Kerr,* 5 Ohio, 155.

We may assume for the purpose of this case that the proceedings and judgment in the ejectment suit afforded

*prima facie* evidence in the suit at bar that Mrs. Sterling held by descent and deed the entire title of which her father John H. Campbell died seized, and also afforded *prima facie* evidence that such title was superior and paramount to that of the Masons which took its rise in the sale made by the administrator of John H. Campbell to George Thomas Clark, and passed through Kellogg in its course to them. No greater force and scope than this could be given to the ejectment case against Kellogg under the circumstances, and we do not say it is proof to that extent. But considering it, its weight in the scale was subject to be neutralized and to be overcome by proper opposing proof. As matter of evidence to help the plaintiff's case it was liable to contradiction. Kellogg had not been brought into such relation to it as to prevent him from assailing it.

It was hence competent for him to show that the title derived from the sale by the administrator of John H. Campbell, and being the title he had covenanted for, was valid notwithstanding the case of Mrs. Sterling, and as both sides traced title to John H. Campbell, it was not necessary to show the origin of John H. Campbell's title as a foundation for proof by Kellogg that the sale by John H. Campbell's administrator was valid. The defendant pursued this line of defense, and in doing so gave in evidence the proceedings before mentioned connected with the administration of John H. Campbell's estate and the sale to Clark, and also the bond given by the administrator on his appointment. He also showed the transmission of this title as we have seen through different conveyances from Clark to Kellogg.

In the course of the introduction of this proof the plaintiff's counsel made several objections which the court overruled. They do not require to be separately noticed. The views hereafter stated will dispose of them.

It may be assumed, perhaps, that it would be claimed by counsel that the second section of the act of 1867, Comp. L., § 4255, was intended to affect only future trans-

actions. But however this may be, the proviso added in 1869 to Comp. L., § 4596, applied to defendant's proof. It is there enacted "that in all cases where any person, or those under whom he holds, has been in actual possession of any lands or premises for the period of ten years, holding and claiming under and by virtue of a deed executed by any executor, administrator, or guardian, such deed shall be *prima facie* evidence of the regularity of all the proceedings from and including the application to sell such lands or premises, to the date and execution of the deed inclusive."

It appeared that at the time when the ejectment suit was brought there had been such holding and possession as here specified. The deed by the administrator was hence *prima facie* evidence by force of the statute, of the regularity of the title passed to Clark, and that title seems to have been regularly transmitted to Kellogg without intervening defect.

The result at the least was therefore in this state of things that the plaintiff's evidence of the failure of Kellogg's title was neutralized; the *prima facie* evidence conceded to the proceedings in the ejectment being met by the *prima facie* evidence afforded by the administrator's deed; and the plaintiff as holder of the affirmative, and bound to support it by a preponderance of proof, failed to do so.

No stress is here placed upon the other probate matters adduced in alleged compliance with the requisites of the previous part of the section referred to, since there are questions of some difficulty which would have to be settled before admitting the correctness of the defendant's view of that feature of the case.

The plaintiff sought to rebut the ground of defense, based on the administrator's deed by showing that the sale by the administrator was a collusive transaction between him and Clark, and was in fact a sale to him and not to Clark; and to establish this he offered Clark's testimony given on the trial in the ejectment case, the

witness having died since that trial. The court excluded it on objection. This was not error. The action was not between the same parties or their representatives in interest.

In case due notice had been given to Kellogg in the ejectment and he had been given opportunity to exercise complete control and accordingly to cross-examine Clark, the objection probably would have been invalid. *Doe ex dem. Foster v. Earl of Derby*, 1 Adol. & Ell., 783. But if that practice had been pursued it is not perceived that there could have been any cause for requiring Clark's testimony for the purpose for which it was proposed. The force of the judgment would have saved any occasion.

In the view of some members of the court the offer made was subject to the further difficulty that it did not appear and was not proposed to be shown that Kellogg had any notice or means of knowledge of the alleged secret and collusive arrangement between the administrator and Clark, or that he was not in the most absolute sense a purchaser in good faith.

Finally giving to the record the most favorable construction for the plaintiff, and it leads to the conclusion that the evidence was evenly balanced and hence that the result reached cannot be questioned. 2 Best's Ev. (Wood's ed.), 364, marg.; 2 Evans' Poth., No. 16, §§ 2, 14: 1 Cow. & Hill's Notes, 306; *Bogert v. Morse*, 1 Comst., 377; *Heinemann v. Heard*, 62 N. Y., 448; *Smith v. First Nat. Bk. etc.* 99 Mass., 605; *Jackson v. Metropolitan Rw. Co.*, L. R. 2 C. P. Div., 125. We have no means of knowing, except by what appears, whether the proceedings in the probate court are subject to any radical defect.

As the question of damages was somewhat discussed, and the proceedings under the statute for the protection of occupying claimants were supposed to cause difficulties, a few words upon the exact question presented by the facts here may be pardoned.

Kellogg bound himself by his covenant of 1864 to make up in money for whatever of the estate, according to its then value, should be lost by failure of his title, the consideration he received to be taken as the measure of the full value of the whole.

He received $2,400. But as there were improvements upon the land, this value applied to both lot and improvements, and it did not by itself afford any criterion for getting their respective values. At the trial of the ejectment in February, 1875, Mrs. Sterling recovered as for the naked lot; such recovery being for a part of the property on the basis of its true value at that time. The residue of the property represented by the value of all the improvements, including such as were on the lot when Kellogg deeded, was not recovered, but was left as it stood and as it was held under the Kellogg title. The loss, then, within the legal operation of Kellogg's covenant, could not exceed the value of the naked lot at the date of the covenant, and in view of the legal sense of the covenant, that could be ascertained by deducting a sum equal to the value borne by the improvements at its date, from the value of the whole, or $2,400. The amount left would be equal to the value borne by the naked lot at the proper time. This, of course, would involve an inquiry as to the value of the improvements at the time the covenant was made. If the plaintiff had prevailed it may be that it would have been needful to have deducted from the value of the naked lot enough to cover its use in common with him by his mother and sister from the time of the judgment in ejectment until his coming of age.

As the plaintiff failed to show any breach of the covenant, and was not hindered from doing so by any error of the court, the judgment must be affirmed with costs.

CAMPBELL, C. J., and COOLEY, J., concurred. MARSTON, J., did not sit in this case.