### BERT FILES v. STATE.

No. A-1571.   Opinion Filed June 3, 1913.

(132 Pac. 509.)

1. **INTOXICATING LIQUORS—Prosecution—Evidence.** For evidence fully sustaining a conviction for maintaining a place where intoxicating liquors were received and kept for the purpose of selling the same, see testimony in this case.

2. **FINES—Imprisonment on Non-payment.** Where a defendant has been found guilty of violating the prohibitory liquor law and his punishment has been assessed at a fine and imprisonment, the court has power to enforce the payment of such fine by the imprisonment of the defendant.

(Syllabus by the Court.)

*Appeal from Garfield County Court;*
*Winfield Scott, Judge.*

Bert Files was convicted of violating the prohibitory liquor law, and he appeals. Affirmed.

Appellant was found guilty in the county court of Garfield county for violating the prohibitory liquor law, and his punishment was assessed at 120 days' confinement in the county jail

and a fine of $420. And it was ordered by the court that if such fine be not paid, the defendant be confined in the county jail of Garfield county until such fine should be paid at the rate of $2 per day.

William J. Roberts testified: That he lived at 820 West Elm street, Enid, Okla., and had lived in Enid 15 or 16 years; that he was a state enforcement officer, and on the 15th day of July, 1911, saw appellant, Bert Files, or Bob Files, in his place of business at 109 East Randolph street, Enid. That Mr. Chaney and the county attorney were there.

"When we entered, the defendant was behind the counter. I had a search warrant, and there was a partition across the room and a door in the west side of the partition. I told him to open that door, and he pulled a string that ran over by the counter and the door opened. I searched and found a lot of whisky and beer bottles, pop bottles, pop, and an ice chest. The ice chest was back of the partition, near the south end of the counter. The ice chest had a secret compartment. In the middle was put the ice, and when the outside rim was raised we found some whisky in it. We also found in this little room corkscrews, pullers, whisky glasses, and bottles. The defendant was searched, and a bottle of whisky was taken off him. A half gallon of whisky was found under a platform near the front of the building. While we were searching, and in the presence of the defendant, a young man came in and said to me, 'Can I get a half pint?' I says, 'I don't know you,' and he says, 'I have got it here 50 times, and the defendant spoke up and says, 'Hell, that is the state enforcement officer you are talking to.' We found a United States internal revenue stamp on the wall, behind a calendar. The whisky was destroyed."

Pete Chaney testified: That he had lived in Enid 18 years and was an enforcement officer. That he was acquainted with defendant's place of business at 109 East Randolph street, Enid. Helped make the raid.

"I went to back door, and Mr. Roberts and Mr. Harmon to front door. The back door was locked, and after two or three minutes I got in, and there wasn't anybody but Mr.

Roberts, Mr. Harmon, and the defendant in there. We searched the place to see what we could find, and for some time didn't find any whisky; but we searched more thoroughly, and finally there was an ice box that had two tops, one in the center and a ring all around, and I got hold of that ring and pressed it open, and there was two walls and possibly a dozen bottles in that false partition, and then I found a half gallon bottle under the north window in under the show case among some papers, and there was a board there, and I pulled it out, and there was a bottle under it, and we found quite a number of empty whisky bottles, a cork puller, and cigarette papers, and on the defendant we found a half-pint bottle of whisky about a third full and a whisky glass."

Charles N. Harmon testified as follows:

"I am county attorney of Garfield county, and on July 15, 1911, helped search defendant's place at 109 East Randolph street, Enid, which was general known as the Alamo Cigar Store."

This witness' testimony was not materially different from that of Roberts and Chaney as to what was found in defendant's place. Witness also testified that defendant afterwards moved his business to 120 East Main street, Enid.

The state also introduced a certified copy of record showing the payment of special tax required of retail liquor dealers by the United States government. This license covered 109 East Randolph and also 120 East Main to which it was transferred.

The appellant offered no evidence whatever.

*W. O. Cromwell,* for appellant.
*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, J. (after stating the facts as above). First. The evidence makes out a plain case against appellant of keeping and maintaining what is commonly called a "whisky joint." The room was fitted up as such, the necessary fixtures and utensils were there, and appellant was possessed of a United States government license to retail intoxicating liquors. We do not see how a stronger or plainer case could be made. The

various objections offered to the admission of the testimony are purely captious and are without merit. The fact that there was no proof that a sale of prohibited liquors had been made in the place kept by appellant is immaterial. Such evidence was not only unnecessary, but would have been admissible only to show the purpose for which the place was kept and maintained. He was not prosecuted for selling intoxicating liquors. His offense consists in keeping and maintaining a place at which such liquors were exposed for sale. The selling of such liquors would be an entirely different and separate offense.

Second. The right of the court to require the confinement of appellant in the county jail in the event he failed to pay the fine is questioned. This has already been settled by the previous decisions of this court in an elaborate opinion by Judge Doyle, adversely to the contention of appellant. See *Ex parte Bowes,* 8 Okla. Cr. 201, 127 Pac. 20.

Without disrespect to counsel for appellant, to our minds it seems the utmost and wildest folly to contend that the Legislature intended that imprisonment may be had for fine, where fine alone is assessed, and not where imprisonment is also assessed. Imprisonment for nonpayment of the fine is the legal means of enforcing such judgment just as imprisonment will follow the nonpayment of a fine for contempt of court. *Brock v. State,* 22 Ga. 98; *Shiver v. State,* 23 Ga. 230; *In re Boling,* 31 Ill. 88; *Brownbridge v. People,* 38 Mich. 751; *State v. Peterson et al.,* 38 Mich. 143, 36 N. W. 443; *Berkenfield v. People,* 191 Ill. 272, 61 N. E. 96. Our statute is but a re-enactment of the common law as to imprisonment for nonpayment of fine, and the practice at common law was to imprison for fine even if imprisonment as a part of the punishment also was imposed in the judgment. *Beecher's case,* 8 Coke, 58; *Fischer v. Hayes* (C. C.) 6 Fed. 63; *U. S. v. Robbins,* Fed. Cas. No. 16,171.

As to the guilt of appellant there can be no question. The evidence is conclusive that he willfully and deliberately violated the law without the least shadow of legal justification or excuse.

From the testimony it is plain that appellant is a confirmed and adroit criminal. Such characters must be taught that they cannot violate the law with impunity. The punishment of appellant has already been too long delayed.

The judgment of the lower court is in all things affirmed. The clerk of this court will issue the mandate at once, with directions to the lower court to proceed to enforce its judgment without further delay.

ARMSTRONG, P. J., and DOYLE, J., concur.