## BLAIN *a.* TAYLOR.

*Supreme Court, First District; Special Term, October,* 1864.

### COVENANT RUNNING WITH THE LAND.

A covenant to keep up a partition fence is a covenant running with the land, and where it imposes a liability other than that imposed by the statute as to "division fences," is an encumbrance within the meaning of a covenant to convey free of all encumbrance.

An agreement by the owner of land, with a railroad company, under the statute to make and repair fences along the road running through his farm, is a covenant running with the land, and is within the meaning of the covenant to convey free of all encumbrance.

Demurrer to complaint.

The complaint showed, 1st. That on the 16th day of April, 1864, the defendants agreed to sell to the plaintiffs a certain farm in South Dover, Dutchess County, N. Y., "adjoining the New York and Harlem Railroad, free from all encumbrances except as to a mortgage," &c. That on examining title, plaintiffs found recorded "a covenant and agreement made by Robert L. Reade (a former owner of said premises) with the New York and Harlem Railroad Company, dated, April 24, 1851, by which he, in consideration of the sum of two dollars per rod, &c., did for himself, his heirs, and assigns, being owners of said farm, covenant and agree with the New York and Harlem Railroad Company, to build, and forever maintain, good and sufficient fences on both sides of said railroad, through said farm;" by the same instrument releasing the said railroad

from "all claim for damages in consequence of their neglect in not having said fences completed previous to that date."

Plaintiffs showed willingness to perform on their part, but claimed that defendants could not, and did not perform on their part, by virtue of the aforesaid agreement with the Harlem Railroad, which agreement the plaintiffs alleged constituted a covenant running with the land, and was an encumbrance.

The defendants demurred on the ground of insufficiency.

*William A. Coursen,* in support of the demurrer.

*Abraham B. Tappen,* for the plaintiff.—I. By common law, the owner of land was bound at his peril to restrain his cattle, and thus indirectly to maintain fences. By the general railroad act, 1850, § 44 (1848, § 42), *Laws of* 1850, 233, the duty of maintaining fences and cattle-guards along railroads was imposed on all railroad companies. By that act they became liable for any damages arising from their neglect in maintaining such fences. (Corwin *a.* Erie R. R. Co., 3 *Kern.* (13 *N. Y.*), 42.)

II. The act of 1848 applies to then existing corporations, and is constitutional. (Suydam *a.* Moore, 8 *Barb.,* 358 ; Waldron *a.* Rens. & Sar. R. R. Co., *Ib.,* 390.)

III. Though the railroad company may be primarily liable to the public for damages arising from neglect to maintain fences, yet it is provided (see statutes below cited), that as between the railroad company and the owner of land adjoining, " who has received, or whose grantor has received, a specific sum as compensation for fencing, and has agreed to build and maintain such fence," the owner is bound to maintain such fence ; and if he neglect, an action will lie by the railroad company against him. A lapse of six years in which this liability has not been enforced does not discharge. (*Laws of* 1854, ch. 282, § 9 ; 2 *Rev. Stat.,* 5 ed., 690, § 57 ; Poler *a.* N. Y. Central R. R. Co., 2 *Smith* (16 *N. Y.*), 476 ; Duffy *a.* Harlem R. R. Co., 2 *Hilt.,* 496 ; Talmadge *a.* Rens. & Sar. R. R. Co., 13 *Barb.,* 493.)

IV. This covenant to keep partition fences runs with the land, and is an encumbrance. (Kellogg *a.* Robinson, 6 *Vermont,*

276 ; Savage *a.* Mason, 3 *Cushing*, 500 ; *N. Y. Sess. Laws of* 1854, 612, § 9.)

V. It is fair to presume that the plaintiffs did not know of this agreement when entering into the contract of sale; and that they supposed the duty of maintaining fence rested on the railroad company. On making examination of title, this agreement with the railroad company appeared upon the Dutchess County Records, and the party agreeing to convey (the defendant herein) not making proper deduction, the title was rejected and this action brought.

CLERKE, J.—Undoubtedly, although a covenant is made by one for "himself and his assigns," yet if the thing to be done is merely collateral, and in no respect concerns the land, an assignee is not bound. For instance, if a lessor covenants in the lease to build a house upon other land than his, or to grind at the lessor's mill, according to the custom, all the corn, grain, or malt which the lessee may have occasion to use or spend, these covenants are not binding on the grantee or assignee.

Where a lessee covenanted for himself, his executors, administrators, and assigns, not to hire persons to work in the mill, situated on the premises demised, who were settled in other parishes, without a parish certificate; this covenant was holden not to run with the land, or to be obligatory upon the assignee of the lease. The covenant must be such as *per se*, and not merely from collateral circumstances, affects the value of the land. (The Mayor, &c., of Congleton *a.* Pattison, 10 *East*, 130.)

The covenant in the case before us, however, is not collateral, but relates to the land itself. The keeping of a fence or partition in repair affects the land as much as keeping a house, or any other building on the premises, in repair. In Watertown *a.* Cowen (4 *Paige*, 510) it was decided by the Chancellor that a covenant not to erect a building in a common or public square, owned by the grantor in front of the premises conveyed, was a covenant running with the land, and passed to a subsequent grantee of the premises without any special assignment of the covenant. The case most in point is that of Kellogg *a.* Robinson (6 *Vermont*, 276), in which it was holden that a covenant in a deed of conveyance, that the

grantee shall maintain the partition fence between the lands conveyed and other lands of the grantor, was a covenant running with the land. But I consider that the statute (*Laws of* 1854, § 9) is conclusive on this subject, in cases like that under consideration.

It expressly enacts that it shall be the duty of every owner of land adjoining any railroad, who has received, or whose grantor has received, a specific sum for compensation for fencing along the line of land taken for the purpose of said railroad, and has agreed to build and maintain a lawful fence on the line of said road, to build and maintain said fence; and it further provides, that if said owner, his heir, or assignee shall not within thirty days after notice build such fence, or if built, shall neglect to maintain said fence, the railroad company may build or repair, as the case may be, and may maintain an action against the person so neglecting, for the purpose of recovering the expenses thereof. It is quite clear then that the plaintiff would be liable, by the terms of the agreement, forever to maintain in good and sufficient condition the fences on both sides of that portion of the New York and Harlem Railroad running through the farm which the defendants have agreed to sell to the plaintiffs. This is a liability to which a grantee would not be subjected, if no such agreement had been made, and no such compensation had been received by Robert L. Reade, a former owner of the farm. The statute relating to " division fences" imposes no liability of this kind.

Therefore, as it is not in the power of the defendants to convey this farm pursuant to their contract, free from all encumbrances, the plaintiff is entitled to recover.

The demurrer must be overruled, with costs; and judgment thereon for the plaintiffs, with liberty to defendants to answer within ten days, on payment of costs.