THE ELEVENTH WARD SAVINGS BANK OF THE CITY OF
NEW YORK, Respondent, *against* ALLAN HAY AND
OTHERS, Appellants.

## [THREE SUITS.]

(Decided April 2d, 1877.)

In a suit to foreclose a mortgage which had been assigned to the plaintiff, the de-
fendant K., who was the owner of the mortgage, swore that he had paid $5000 on
account thereof ; that he had made this payment at the time of the purchase of
the mortgage by the plaintiffs, and had paid it to one L., the president of the
plaintiff, upon the agreement that it should be credited on account of the mort-
gage. This testimony was contradicted by the oath of L., who swore that the
$5000 was paid him for procuring the plaintiff to purchase the mortgage from the
then holders of it. The documentary evidence showed that on the purchase the
plaintiff had given checks for $45,000, the amount due on the mortgage, to the
order of K., who had endorsed them over to the assignors of the mortgage, and
that K. had then given to L. his own check for $5000; that K. had at the same
time given his own bond to the plaintiff to secure the payment of $45,000 on the
mortgage, and that he had for several years paid the interest on $45,000. The
court at special term held the testimony of K. could not overthrow the testimony
of L., supported by this documentary evidence, and that the claim of payment
was not established, and the court at general term refused to disturb that deci-
sion.

A motion to consolidate suit is made too late when it is not made until the trial.

APPEALS from three judgments of foreclosure and sale
made by this court, and also from an order denying a motion
to consolidate the three suits.

The three suits were for the foreclosure of three mort-
gages, all on the same property, made by Allan Hay to three
several parties, and the payment of which had been assumed
by the defendant, David M. Koehler, to whom the property
had been transferred by Hay.

The defendant Koehler alone defended, and claimed to
have paid $6000 on account of the mortgages. He claimed
to have paid $5000 on account of the mortgages—on which

there was then due $45,000—at the time when they were purchased by the plaintiff, and $1,000 subsequently.

The plaintiff claimed that no such payments had been made, and that the $5000 which had been paid by the defendant on the purchase of the mortgages by the plaintiff had been paid to Edward V. Loew, then president of the plaintiff, for his services in procuring the purchase of the mortgages, and that the $1000 had been paid to Edward V. Loew, who, at the time of such payment, was president of the Manufacturers' and Builders' Fire Insurance Company, on the sale by it to the plaintiff of a $11,000 mortgage on other property belonging to the defendant Koehler, to make up the difference between the face of the mortgage and $10,000, the amount paid for the mortgage by the plaintiff, and that this $1000 had been paid over by Mr. Loew to the insurance company.

There was a conflict between the testimony of the defendant Koehler and that of Edward V. Loew, who testified as a witness on the part of the plaintiff, as to what agreement was made between them as to the disposition to be made of the sums thus paid by Koehler to Loew; but it appeared, without contradiction, that, on the assignment of the mortgages, Koehler had given his bond to the plaintiff to secure $45,000 due on the mortgages; that checks for $45,000 had been drawn by the plaintiff to the order of Koehler, and by him endorsed over to the assignors of the mortgage; that Koehler had drawn his own check to the order of Loew for $5000; and that Koehler had for several years paid to the plaintiff the interest on $45,000.

The following opinion was written at special term:

VAN BRUNT, J.—All the documentary evidence in this case is entirely inconsistent with the theory that Mr. Koehler paid the $5000 on the mortgages in suit at the time the plaintiffs took the assignment of them. If he made the payment on account of the principal of these mortgages, why did he execute a bond to pay $45,000 when the mortgages should become due? Why did the bank give its checks for $45,000

to Koehler's own order, and Koehler endorse them over to the holders of the mortgages ? Why did Mr. Koehler draw his check to Mr. Loew individually, and not to the plaintiffs ? In the face of these circumstances, it seems to me certain that the payment was not intended to apply upon the principal of these mortgages. The payment of the $1000 is equally well accounted for. As to the strictures passed upon the conduct of the president of the bank, they cannot be considered here. Whether he acted legally or illegally in taking this money cannot in any way affect the plaintiff's claim. The plaintiffs are entitled to judgment of foreclosure and sale for the full amount claimed.

The only other question necessary to consider is that of consolidation. If the motion to consolidate had been made promptly, I think it would have been the duty of the court to have granted it ; but in a case where such motion is delayed until causes are called for trial, it seems to me that the defendant has been guilty of such laches as to deprive him of his claim for this relief."

*Kaufmann, Tunstall & Wagner*, for appellant.

*A. C. Anderson & Albert Cardozo*, for respondent.

CHARLES P. DALY, Chief Justice.—The first question raised in this case, a question of fact, was, whether the $5000 was paid upon the mortgage or to Loew in consideration of his getting the plaintiffs to take the mortgage. Upon that question, Koehler and Loew were in direct conflict ; and although the conduct of Loew, as the president of a savings bank and one of the finance committee of the institution, in advocating in the committee and getting the bank to take a mortgage of $45,000, for which service Koehler was to pay, and did pay him $5000, was extraordinary in the chief officer of such an institution, yet we cannot say, as between the witnesses, who directly contradicted each other, that the judge below decided erroneously, as he put his decision upon the ground that Koehler at the time gave his bond for $45,000,

when, if the $5000 had been received by the bank as a payment upon the mortgage, the bond should have been in $40,000; as well as upon another equally significant circumstance, that the bank drew the check for $45,000 to Koehler's own order, and he endorsed it to the owner of the mortgage and drew his check for $5000 to Loew individually instead of to the bank.

These contemporaneous documentary facts, and the continuous payment afterwards to the bank by Koehler of interest on $45,000, were circumstances strongly against his version of the transaction, and we cannot say that the judge was wrong in attaching to them the weight which he did.

As respects the second question of fact, Loew testified that Koehler gave the $1000 as a bonus to the insurance company to secure the transfer of the other mortgage to the plaintiff, and that he, Loew, when he received it, paid it over to the insurance company, and Koehler's statement in respect to this transaction was so loose and unsatisfactory as to justify the judge in finding against him.

If the defendant wished to have the suits consolidated, he should have moved before they were brought on for trial. The usual course is to move before trial, that the other party may have an opportunity to read affidavits and be heard as upon an ordinary motion before trial. It was a matter of discretion with the judge, and as he put his denial of the motion upon the ground of the defendant's laches, there is no reason why an appellate tribunal should now order the suits to be consolidated (Wait's Pr. vol. 2, pp. 557, 558).

The motion for a new trial, therefore, should be denied.

The judgment and order appealed from are affirmed with costs ($10 costs and disbursements of affirmance of order).

JOSEPH F. DALY and VAN HOESEN, JJ., concurred.

Judgment and order appealed from affirmed with costs.[*]

[*] The judgment entered on this decision was affirmed by the Court of Appeals, April 16th, 1878. (See 73 N. Y. 609.)