Bumsey, J.
The first question presented is whether the clause of the deed upon which this action is based shall be construed as a covenant or as a condition.
The words “upon condition” or “provided” are the usual technical words to create a condition, but it cannot be said that they are necessarily to be construed as having that effect. The question in each case is to be decided upon consideration of the who,e instrument, having in view the intention of the par tie:; to it (1 Lead. Cas. on Real Prop. 123, 124).
Even the word “ provided,” which is said to be apt to make a condition, frequently expresses a covenant (4 Kent's Comm. 132, note b ; Stanley v. Colt, 5 Wall. 119, 166). The consequences of a breach of a condition are so serious, and the remedy is of so harsh a nature, that it is not favored in the law, and will not be implied unless the words used are such as clearly import that the continuance of the estate depends upon the performance of the condition (Craig v. Wells, 1 Kern. 315, 320).
In this case the object of the parties was only to *112 impose upon the grantee in the deed the duty .of building and maintaining the division fence ; and, of course, it was intended that the grantor should have a remedy for the failure of the grantee to perform.
If this clause is coustrned solely as a condition, the estate of the grantee is forfeited by his failure either to build or to keep up the fence, and the grantor has no remedy for either, except to re-enter (1 Lead. Cas. on R. P. 148). No one but the grantor or his heirs can take advantage of that remedy (Id. 141; Van Rensselaer v. Ball, 19 N. Y. 100, 103). Therefore, if this be a condition, the remedy for its breach has been lost, and the liability of the grantee is practically ■ ended, although the object for which the contract was made still exists. I do not think that the parties to this deed intended, either that the grantee of the premises, conveyed should lose his estate if he failed to build or keep up the fences, or that a subsequent grantee of the farm should have no remedy for such failure. No violence is done to the words used by construing them' as a covenant, and I think such a construction carries' out the intention of the parties. It does not violate the statute which prohibits the introduction of implied covenants in a deed of real estate. The covenant here is created by the express words of the parties.
Regarding this clause as a covenant to keep the line fenced, the authorities are clear that it runs with the land, at least so far as it requires the grantee to “ keep" fenced” the lands conveyed (Blain v. Taylor, 19 Abb. Pr. 228 ; Kellogg v. Robinson, 27 Am. Dec. 550 ; Hazlett v. Sinclair, 40 Am. Rep. 254; Bronson v. Coffin, 108 Mass. 175, and cases cited, 11 Am. Rep. 335). It appears clearly by the evidence that the premises in question were part of the farm of Simpso’n, now owned by the plaintiffs, and that the fence complained of isa division fence between the lot conveyed and the rest of the farm. No notice of this covenant was-required *113 to charge the subsequent purchaser; but if it was, the deed to Woodward was sufficient (2 Pomeroy Eq. Juris. § 626, et seq.). The covenant in the deed to Woodward bound him, by his acceptance of the deed and taking possession under it, and the defendant, claiming under him, is equally bound (Atlantic Dock Co. v. Leavitt, 54 N. Y. 35). Indeed, this follows from the fact that the covenant runs with the land. There is no doubt that the object of the covenant was the benefit of the land retained by Simpson, and which is now owned by plaintiffs, and the right to enforce the covenant passed to the plaintiff with the title of the premises. They own all the premises, and they have all the rights of Simpson in them, and the actual situation of the parties and lands must fix their rights. No authority is cited to show that the covenant musí be mentioned in the deed to plaintiffs to pass the right to enforce it (Watertown v. Cowen, 4 Paige, 510; Phoenix Ins. Co. v. Continental Ins. Co., 87 N. Y. 400, 408), and I think that within the two cases cited no special mention or assignment was necessary.
The case of Renals v. Cowlishaw (L. R., 9 Ch. Div. 125; S. C., 25 Moak, 827; 11 Ch. Div. 866; S. C., 32 Moak, 851) does not hold the contrary. The Vice-Chancellor held in that case, that the covenant sued on was not for the benefit of the estate retained, but for the personal benefit of the owner, and for that reason it was not available to a subsequent purchaser of a portion oj the estate, unless it was so referred to in his deed as to warrant the inference that it was assigned to him ; bul he concedes, that if the plaintiff had been the grantee of the whole estate retained, he would have been entitled to-sue on the covenant.
The only remaining question is as to the relief to be given to the plaintiffs. The duty of the defendant is to keep up the fence, and the plaintiffs are not called upon to do it (Beach v. Crain, 2 N. Y. 86), The cove *114 nant is a continuous one, and plaintiffs cannot get the full' benefit of- it if they are put to a suit for damages each time the defendant fails to perform.
There is no such uncertainty about it as to forbid a decree for specific performance. In Jones v. Seligman (81 N. Y. 190), the duty imposed upon a railroad company to build a fence was decreed to be performed, and in People v. R. & S. L. R. R. Co. (76 N. Y. 294), performance of the like duty was compelled by mandamus. If the building or repair of a fence may be compelled when the duty is imposed by statute, there is no reason why it may not be decreed when it is assumed by contract. The judgment should be that, defendant keep the fence in repair where it adjoins the premises of the plaintiffs, with costs to plaintiffs.
Note on Covenants Running with the Land.
In determining whether a covenant runs with the land the principal consideration is respecting ita nature and relation to the title; but attention is often necessary to several incidental aspects of the subject which are of especial importance in appreciating the significance of the reported cases, and their value or weight as authorities. See note on p. 108.
The first point to be noted is that every covenant has two sides, and the inquirer should aslc which side it is that is supposed to run with the land, in the case in hand; in other words, is he inquiring whether the burden of the covenant runs with the covenantor’s land, or whether the benefit of the covenant runs wit-h the covenanted’s land. These are essentially different questions. The reference made by the phrase ‘‘running with the laud” is perhaps usually to the benefit of the covenant, in the cases where the burden of it is personal, as in the case of covenants for title; but in modern practice it is almost equally common to find the question arising on the other side of the covenant, as in the case of party-wall agreements, covenants against nuisances, and other covenants with adjoining owners, or even strangers. See, for instance, Harshaw v. Reid, 45 N. Y. 415.
Sometimes both questions may arise in reference to one covenant. See Renals v. Cowlinshaw, cited in the text.
Moreover, in such covenants as those relating to party-walls, common drains, &c., now frequently used, the obligation to" pay and the right to exact payment when the structure shall he used, are separable from the easement ; and the burden and the benefit, or both in *115 respect of the payment may be personal, while the burden and benefit as to the easement runs with the land. See Scott v. McMillan, 76 N. Y. 141, affirming 8 Daly, 320.
The next point is to consider whether the language of the covenant expressly includes heirs and assigns. The technical phraseology in this respect is not controlling; but it is properly influential. See Ernst v. Parsons, 54 How. Pr. 168.
If the covenantor intends to restrict himself only, and not the land when held by others, the appropriate words are, to covenant for himself, his executors and administrators, that Tie will, or will not, &c., as the case may be. If he intends to bind the land, the appropriate words are, to covenant for himself, his heirs and assigns, that Tie and they will, &e.
So, if the benefit of the covenant is intended to be personal, the appropriate words would indicate that he so covenants to and with the covenantee and his executors and administrators; but if intended to nun with land of the covenantee, the appropriate words would indicate that he so covenants to and with the covenantee and his heirs and assigns.
But technical phraseology in this respect, or the want of it, is aot controlling. See Scott v. McMillan, 8 Daly, 330, aff’d in 76 N. Y. 141; Jeffries v. Jeffries, 117 Mass. 184.
Thus in Hart v. Lyon, 90 N. Y. 663, the contract, after the provision as to the building of the wall, contained this covenant, “And the said parties hereto do hereby mutually covenant and agree for and with themselves and their respective heirs and assigns, that if it shall become necessary to repair or rebuild the whole or any part of said party-wall, the expense of such repairing or rebuilding shall be borne equally by the parties hereto, their respective heirs and assigns.” The court say : “ It is evident it was the plain import of the instrument that the portion which bound the heirs and assigns should be construed as perpetual, and as a covenant running with the land, while the other, being personal, could not be so regarded.”
Thirdly, attention should be given to the instrument by which the land has passed to the person by or against whom the covenant is now set up; for if that instrument expresses an intention to pass on the burden or the benefit of the covenant, as the case may be, the conclusion that it runs with the land is, in so far, aided. Stewart v. Aldrich, 8 Hun, 241.
Lastly, these considerations should be weighed in the light of the fact that the doctrine of “running with the land” originated when direct assignments of choses in action were not sanctioned at law; and part of the restrictions under which courts of law were aeons *116 tbmed to apply the doctrine have been relaxed since choses in action iiave been made so generally assignable. This change in the law has given enhanced weight to the question of intent as manifested in the language of the covenant and of the mesne conveyances, as above explained. Boyd v. Belmont, 58 How. Pr. 513.
See, also, Taite v. Gosling (Chan. Div. 1879), 27 Weekly R. 394; Master v. Hansard, 36 L. T. R. N. S. 535; Weed v. Larkin, 54 Ill. 489; S. C., 5 Am. R. 149; Hagar v. Buck, 44 Vt. 285; S. C., 8 Am. R. 368; Bronson v. Coffin, 108 Mass., 175; S. C., 11 Am. R. 335; Roche v. Ullman (Supm. Ct. Ill., Sept. 1882), 14 Reporter, 652; abstr. S. C., 27 Alb. L. J. 360; Shaber v. St. Paul Water Co., 15 Reporter, 339; Morse v. Garner, 47 Am. Dec. 565, 569.
In drawing such a covenant it is proper to insert in so many words (bat “ this covenant shall run with the land hereby granted;” or Otherwise, as may be the intent; and this is now not infrequently done in practice.
In Boyle v. Tamlin, 6 B. & C. 337, it was said that “aright to have fences repaired by the owners of adjoining lands is in the nature of a grant of a distinct easement affecting the land of the grantor.”
The question in Renals v. Cowlishaw (cited on p. 113), was whether the benefit passed io the assignee of the covenantee. The Vice Chancellor assumed, however, that the burden of the covenant expressed to be by the grantee for himself, his heirs and assigns, would in equity bind the grantees having notice, although not deemed to run with the land so as to give a legal remedy against him.
For a convenient clue to other recent cases on covenants to fence, . see Boston & Albany R. R. Co. v. Briggs, 132 Mass. 24; Bronson v. Coffin, 108 Mass. 156; S. C., 11 Am. R. 333; Georgia Southern R. R. Co. v. Reeves (Geo., February, 1880), 11 Reporter, 361; Hall v. Scott County (Mo., 1881), 12 Reporter, 101; Note to Morse v. Garner, 47 Am. Dec. 575.