SCHWALLBACK, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*September 3 — September 20, 1887.*

ADVERSE POSSESSION, *as against grantee:* COVENANT: ESTOPPEL: NOTICE.

1. The continued occupation of land by one who has conveyed the same to another is presumptively not adverse, but in subordination to the title of his grantee. He is estopped by his deed from claiming that it is adverse.
2. In order to destroy such presumption and hold by adverse possession as against the title under the first deed, a person claiming under a junior deed, given by the same grantor while he still remained in possession of the land, must disseize the rightful owner, either by ousting him from an actual possession, or by taking such open and notorious possession when the land is unoccupied that the owner must be presumed to know that he holds adversely; and he must show by clear and positive proof a continuance of such adverse possession for the time prescribed by statute.

3. A covenant in a deed of land for a quiet and peaceable possession by the grantee runs with the land, and binds any one to whom the same grantor subsequently conveys the same land, and the possession of such second grantee must be held to be in subordination to the title of the first grantee.

4. Where two persons claim to derive title to the same land under distinct conveyances from the same grantor, both are estopped from denying the title of such grantor, and as between themselves the elder is presumed to be the better title, and must prevail; and the estoppel of the grantor as against such elder title extends to all persons claiming under any title by deed or otherwise acquired from him subsequent thereto.

5. The recording of a deed is constructive notice of its existence and contents to all subsequent purchasers of the land, and renders them subject to whatever covenants therein run with the land.

APPEAL from the Circuit Court for *Washington* County. The following statement of the case was prepared by Mr. Justice CASSODAY:

This action of ejectment was commenced May 12, 1886, and is for a strip of land described, being 120 feet in width and containing about one and four-tenths acres, and lying on the southerly side of, and adjoining the defendant's right of way at, Germantown station. Upon the trial the following facts were proved by record evidence, and are undisputed.

Both parties claim title to the strip of land in question through one Witlin. In 1853 he owned the whole forty within which this strip was embraced, and had been such owner from 1845. December 9, 1853, Witlin and wife, by warranty deed with covenants of seizin, quiet enjoyment, and against all incumbrances, reciting a consideration of $23, conveyed to the Milwaukee, Fond du Lac & Green Bay Railroad Company a strip of land through said forty, six rods in width, and containing one and three-fourths acres, " for the uses and purposes of said [last named] railroad company," being for its right of way, and which deed was recorded May 3, 1855; that said strip subsequently be-

came the property of the defendant, and is now held by it as a part of its right of way.  October 3, 1855, Witlin and wife, by warranty deed with covenants of seizin, quiet enjoyment, and against all incumbrances, conveyed to the La Crosse & Milwaukee Railroad Company the strip of land in question, and fully described as in said forty, of 120 feet in width, and lying on the southerly side of and adjoining said right of way, and extending southeasterly a distance of 550 feet, containing one and four-tenths acres, " for the uses and purposes of the said [last named] railroad company," wherein the said Witlin and wife covenanted and agreed for themselves, their heirs and assigns, and at their own cost and charges, to build and maintain good and sufficient fences on both sides of said last named strip of land, and which said last named deed was recorded October 30, 1855; and that said last named strip of land subsequently became the property of the defendant as the successor of said La Crosse & Milwaukee Railroad Company, and was in the possession of the defendant at the commencement of this action.

June 28, 1864, Witlin and wife, by warranty deed reciting a consideration of $2,200, conveyed said forty acres of land, "more or less, agreeable to government survey," to Fridolin and Joachim Schindler, and said deed was recorded June 29, 1864.  October 12, 1866, Fridolin, Joachim and Henry Schindler, by warranty deed reciting a consideration of $2,200, conveyed said forty acres of land, "more or less, agreeable to government survey," to John Francis Schwallback, father of the plaintiff, and which said deed was recorded December 18, 1866.  February 26, 1884, John Francis Schwallback and wife, by warranty deed reciting a consideration of $2,000, conveyed to the plaintiff a portion of said forty acres of land, described as " commencing at the northwest corner thereof; thence south, 80 rods, to the 1-16 line; thence east, 80 rods, to the 1-8 line; thence north, 52 rods

and 5 feet, to the south line of the railroad grounds; thence northwesterly, along said south line of said railroad, 58 rods and 4 feet, to the 1-4 line; thence west, 28 rods and 7 feet, to the place of beginning," — containing 35.56 acres of land according to government survey.   April 27, 1886, John Francis Schwallback and wife, by quitclaim deed reciting a consideration of $1, conveyed to the plaintiff all that portion of said forty acres lying south and west of said strip of land constituting said right of way, and described in said deed of December 9, 1853.

The cause was submitted to the jury, who returned a verdict in favor of the plaintiff.   From the judgment entered thereon, the defendant brings this appeal.

*John W. Cary*, for the appellant, contended that the railway was a public highway, the land in suit was necessary for its purposes, and its right thereto could not be taken away by adverse possession any more than the rights of the public in lands or common highways.   *Lindsey v. Miller's Lessee*, 6 Peters, 666; *Burgess v. Gray*, 16 How. 48; *Oaksmith's Lessee v. Johnston*, 92 U. S. 343; *Knight v. Leary*, 54 Wis. 459; *Comm. v. McDonald*, 16 Serg. & Rawle, 390; *Comm. v. Alburger*, 1 Whart. 469; *Barter v. Comm.* 3 Penrose & Watts, 253; *Penny Pot Landing v. Philadelphia*, 16 Pa. St. 79; *Burbank v. Fay*, 65 N. Y. 57.   The plaintiff's evidence is not sufficient to establish title by adverse possession; and he is estopped by a covenant running with the land from setting up such possession.

For the respondent there was a brief by *P. & T. O'Meara*, and oral argument by *P. O'Meara*.   They argued that plaintiff and his grantors had been in the undisputed possession of the land in suit for over twenty years, and such possession filled all the requirements of the statute of limitations as to adverse possession.   He entered under a recorded warranty deed which purported to give him a clear title, and his possession was adverse to all the world.   *Syd-*

*nor v. Palmer*, 29 Wis. 226; *Stevens v. Brooks*, 24 id. 326; *McMillen v. Wehle*, 55 id. 685; *North v. Hammer*, 34 id. 425. Both the ten and the twenty years limitation had run in favor of the plaintiff. *Furlong v. Garrett*, 44 Wis. 111; *Wilson v. Henry*, 40 id. 594; *Woodward v. McReynolds*, 2 Pin. 268; *Wiesner v. Zaun*, 39 Wis. 188; *Pepper v. O'Dowd*, id. 538; *Sater v. Meadows*, 68 Iowa, 507. Only the sovereign power is exempt from the operation of the statute of limitations. *Lessee of Cincinnati v. First Presb. Church*, 8 Ohio, 298; *County of St. Charles v. Powell*, 22 Mo. 525; *Armstrong v. Dalton*, 4 Dev. Law, 568; *Clements v. Anderson*, 46 Miss. 581; *Evans v. Erie Co.* 66 Pa. St. 222.

CASSODAY, J. It appears that the strip of land in question, lying along the southwesterly side of the defendant's right of way, was used and cultivated by the plaintiff's several grantors until the fall of 1885. It was then fenced off by the defendant. That was after the plaintiff obtained from his father a warranty deed of the thirty-five and fifty-six hundredths acres, and before he obtained from him his quit-claim deed. The two strips of land mentioned, claimed by the defendant, and being in that forty, together contained a little over three acres. During the eighteen or twenty years that the plaintiff's father owned the portion of the forty not belonging to the railway company, only thirty-seven acres appear to have been assessed. Upon the facts stated, the plaintiff claims the right to recover on the ground of adverse possession in him and his several grantors. The question presented is whether such facts warrant the court in holding such adverse possession. The title to the strip of land in question undoubtedly became vested in the railroad company by the deed to it from Witlin and wife, October 3, 1855, subject only to re-entry in case of breach of condition subsequent. *Horner v. C., M. & St. P. R. Co.* 38 Wis. 165; *Cleveland, C., C. & I. R. Co. v. Coburn*, 91 Ind. 557;

17 Am. & Eng. R. Cas. 41; *Vail v. M. & E. R. Co.* 21 N. J. Law, 190. The mere fact that Witlin continued to use and occupy that strip in connection with his other lands, until he conveyed to the Schindlers in 1864, is no evidence that his possession was adverse to the railroad company, his own grantee. On the contrary, such occupancy by him for nine years, in the language of the statute, must "be deemed to have been under, and in subordination to, the legal title," which he had so conveyed to the railroad company; for he certainly was estopped by his own deed from claiming that his possession was adverse to his own grantee. Sec. 4210, R. S.; *McCormick v. Herndon,* 67 Wis. 650. The deed to the railroad company was recorded in 1855. This being so, we must hold that the Schindlers took title with constructive notice of the existence and contents of that deed. For the same reason, we must hold that the father of the plaintiff, and also the plaintiff, took title with like notice. So that the plaintiff, his father, and each of the Schindlers must be conclusively presumed to know that Witlin not only had no title to the strip of land in question when he deeded to the Schindlers, but that he and his wife had, for themselves, their heirs and assigns, covenanted and agreed with the railroad company [grantee] and its assigns, that they would, at their own costs and charges, build and maintain good and sufficient fences on both sides of said strip of land therein conveyed, and also that said railroad company and its assigns should remain in the quiet and peaceable possession of said strip of land.

In several of the states it has been held that a covenant to erect and maintain a partition fence, where there is a privity of estate existing between the covenantor and covenantee, or is created at the time of making the covenant, runs with the land and is binding upon a subsequent grantee. *Bronson v. Coffin,* 108 Mass. 175; 11 Am. Rep. 335; 118 Mass. 156; *Hazlett v. Sinclair,* 76 Ind. 488; 40 Am.

Rep. 254; *Easter v. L. M. R. Co.* 14 Ohio St. 48; *St. L., J. & C. R. Co. v. Mitchell,* 47 Ill. 165; *Duffy v. N. Y. & H. R. Co.* 2 Hilt. 496; *Blain v. Taylor,* 19 Abb. Pr. 228; *Kellogg v. Robinson,* 6 Vt. 276; *Morse v. Garner,* 47 Am. Dec. 575, and note. Those cases are distinguishable from *Cole v. Hughes,* 54 N. Y. 444, where no privity of estate existed or was so created, and perhaps from *Hartung v. Witte,* 59 Wis. 285, where the agreement, to maintain the fence, was by the grantee in the deed who conveyed to the defendant. For a discussion of such distinction, see *Norcross v. James,* 140 Mass. 188; 25 Am. Law Reg. 64; 3 Washb. Real Prop. 493, 494 (*659). But however this may be, there can be no doubt but what the covenant, that the railroad company and its assigns should remain in the quiet and peaceable possession of the strip of land in question, did run with the land, and hence was binding upon the subsequent grantees of Witlin, including the plaintiff and his father. Since such subsequent grantees each entered into possession subject to said deed to the railroad company containing such covenants, such possession must, upon the principle already stated, and under sec. 4210, R. S., "be deemed to have been under and in subordination to the legal title," in the railroad company or its assigns, "unless it appears that such premises have been held and possessed adversely to such legal title for ten years," under sec. 4211, R. S., or twenty years, under sec. 4213, R. S., before the commencement of this action. Each of such subsequent grantees must be presumed to have entered under their respective deeds, with knowledge that Witlin had previously parted with the title by deed containing at least one covenant running with the land, and binding upon him as such grantee, to the effect that he would "forever warrant and defend" the "premises in the quiet and peaceable possession" of the railroad company and its assigns. With such presumption resting upon each of said grantees, can we affirm from his mere occu-

pancy or possession, the same as Witlin had enjoyed it for nine years, that his entry was "under claim of title" to said strip, within the meaning of the statutes cited, merely because it was described in his deed? It must be remembered that mere occupancy or possession for twenty years is not sufficient to set the statutes of limitation running. To do that, it must be held adversely. *Hacker v. Horlemus, ante,* p. 280; *Sartain v. Hamilton,* 62 Am. Dec. 524.

It has been held that whenever both parties claim title under the same person, neither of them can deny his right, and as between them the elder is the better title and must prevail; and hence, that the estoppel of the grantor to deny his grantee's title arising from his deed, extends to all persons who claim from or under the grantor by title acquired subsequent to the grant, whether by deed or otherwise. *Gilliam v. Bird,* 8 Ired. L. 280; 49 Am. Dec. 379, and cases cited in the note. This must, at least, be so presumptively. Any of such subsequent grantees, desiring to destroy such presumption and take and hold that strip of land by adverse possession to which he had no title by virtue of his deed, though described in it, was bound first to disseize the rightful owner before he could set the statute running in his favor. As to what constitutes such disseizin is well stated by PARSONS, C. J., in the leading case of *Kennebeck Purchase v. Springer,* 4 Mass. 416; 3 Am. Dec. 227, where he said: "When a man is once seized of land, his seizin is presumed to continue until a disseizin is proved. . . . When a man not claiming any right or title to the land shall enter on it he acquires no seizin but by the ouster of him who was seized, and he is himself a disseizor. To constitute an ouster of him who was seized, the disseizor must have the actual, exclusive occupation of the land, claiming to hold it against him who was seized, or he must actually turn him out of possession. . . . To constitute a disseizin of the owner of uncultivated lands by the entry and

occupation of a party not claiming title to the land, the occupation must be of that nature and notoriety, that the owner may be presumed to know that there is a possession of the land adverse to his title; otherwise a man may be disseized without his knowledge, and the statute of limitations may run against him, while he has no ground to believe that his seizin has been interrupted." That opinion has been regarded as high authority on the doctrine of adverse possession, not · only by the courts of that state, but by others. See note to last report cited, and 3 Washb. Real Prop. 160 (*494). " The doctrine of adverse possession is to be taken strictly. Such a possession is not to be made out by inference, but by clear and positive proof. Every presumption is in favor of possession in subordination to the title of the true owner." *Huntington v. Whaley*, 29 Conn. 391. Here the testimony fails to disclose anything more than a mere occupancy or possession by any of such subsequent grantees. It was nothing more than the occupancy of Witlin before any of such subsequent conveyances. That was subordinate to the title of the real owner. We must hold that there is an absence in the record of any evidence of disseizin.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

