## REYNOLDS, ET AL, vs CLOWDUS, ET AL

Opinion delivered September 23, 1903.

1. *Indian Lands—Ejectment—Instructions.*

It was not error for the court to instruct the jury, in an action of eject-
ment, that the defendant was entitled to a judgment if he showed a
better title than plaintiff, notwithstanding the rule that plaintiffs,
in such an action, must recover on the strength of their own title,
where both parties claim title from a common source.

2. *Indian Lands—Ejectment—Title—Parol Proof—Instructions.*

In an action of ejectment for possession of indian lands the defendant
alleged abandonment by the plaintiff's grantor prior to the transfer
to plaintiff, and that a verbal gift of all his rights was, at the same
time, made by plaintiff's grantor to defendant. The evidence was
conflicting. , *Held*, that it was not error for the court to instruct
the jury that defendant could not recover unless they found he had
an equal title or a conveyance from somebody who had a better
title than plaintiff, provided they found plaintiff to have a regular
chain of title from the original owners. And, *Held*, that such in-
struction, if erroneous, was not prejudicial to defendant.

3. *Ejectment—Abandonment—Gift—Instructions.*

In an action of ejectment, an instruction, asked by defendant, that
if plaintiff or those through whom he claimed, had abandoned the
land or given same to defendant or agreed on a boundary line with
defendant, then plaintiff cannot recover, is entirely too broad; for
plaintiff's grantor could have done only one of these things, not both.

4. *Ejectment—Title—Verbal Gift—Parol Proof.*

In an action of ejectment, a verbal transfer of the premises sought to
be established by parol proof, constituted no good defense. A verbal
transfer of the premises is void; and a legal title to land cannot be
proved by parol evidence.

5. *Indian Lands—Title—Gift Unaccompanied by Possession Confers no
Rights.*

Although a Choctaw citizen might put another citizen in possession

of lands, in possession of and segregated from public domain by the former, and thereby make a valid gift good as against the grantor and the world; but where possession is not taken by the donee, and is afterwards resisted by the donor, the donee acquires no rights in the premises.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Ejectment by S. A. Clowdus and others against M. C. Reynolds and others. Judgment for plaintiffs. Defendants appeal. Affirmed.

This is an action of ejectment brought by S. A. Clowdus and others against M. C. Reynolds and others. The plaintiffs in this action, though citizens of the Chickasaw Nation, claim to have purchased this land from one O. W. Seay on the 19th day of September, 1898, by a written bill of sale therefor; that the defendants were in the unlawful possession for one year previous to the beginning of the action; and praying for the possession of the premises and for damages in the sum of $250. The defendants file their answer, and deny that the plaintiffs purchased this land of O. W. Seay in September of 1898, and deny the ownership of the plaintiffs thereto, and deny that they have been in the unlawful possession of the premises sued for or that they are now in the unlawful possession of the same. Further answering, they say that O. W. Seay, abandoned all claim, right, or title that he had to these premises, and permitted said land to become a part of the public domain; that the defendant, as agent of certain codefendants, who were members of the Choctaw Tribe of Indians took possession of said lands, and placed a wire fence around the same, acting upon the representations made by said O. W. Seay that he, O. W. Seay, had

abandoned all claim that he had in and to said property; that said defendant Reynolds, believing the statements of Seay, expended money in fencing said lands, to the end that his co-defendants Engleman and Dufords might allot said lands as their proportionate part of said Choctaw Nation, and that said O. W. Seay gave said lands to said Indian citizens, and placed them in the possession of the same, and agreed that the fence might be placed where it now is; that such improvements were reduced to the possession of the defendants long before any transfer was made by the said Seay in this action; and ask to be discharged, with their costs. The case was tried to a jury, evidence submitted on both sides in behalf of both parties, and the jury returned a verdict finding for the plaintiffs, assessing damages in the sum of $87.15. Judgment was pronounced in favor of plaintiffs on said verdict. Defendants thereafter filed their motion for new trial, which was presented to the court and overruled, and appeal taken to this court.

Cruce & Cruce, for appellants. Gilbert & Gilbert and Morris & Hayes, for appellees.

GILL, C. J. Appellants make three several assignments of error, which are as follows: "First. The court erred in instructing the jury, substantially, that plaintiffs were entitled to recover unless defendants showed a better title than plaintiffs. Second. The court erred in instructing the jury that unless defendants had some conveyance from somebody who had a better title, or an 'equal title,' they could not hold the land against plaintiffs. Third. The court erred in refusing to instruct the jury, as requested by defendants, that if plaintiffs' grantor had given the lands in controversy to defendants, or had abandoned the same, and agreed with defendants on a line, plaintiffs could not recover."

Appellants consider the first and second assignments of error together. The evidence in this case showed about the following: That the plaintiff, Clowdus, a citizen of the Chickasaw Nation, in September of 1898, bought the premises in controversy from O. W. Seay. O. W. Seay had acquired these premises by virtue of settlement and improvement, and by virtue of a purchase of part of the same from one Thomas Graham, who was a Chickasaw citizen. The evidence of the defendants did not in any wise refute the claim of the plaintiff in this action to these premises, but they claimed the premises also through Oscar Seay. Oscar Seay, by parol, and without consideration, voluntarily told the defendant that he could take these premises for the use of Mollie Engleman and the Duford children; that he (Seay) did not intend to use it any further. This conversation occurred between him and Seay in July, 1898. This conversation is denied by Seay, who says that instead of such conversation he offered to turn this land over to the defendants upon payment of $100.

The court instructed the jury as follows:

"This is an action brought by the plaintiffs against the defendants for the recovery of the possession of certain lands and for damages for the use of same while the defendants were in possession or since the institution of this suit. The burden is upon the plaintiff to establish by a fair preponderance of the evidence the case that he sets up in his pleading —the allegations he makes in his complaint.

"You are the sole judge of the weight of the testimony and of the credibility of the witnesses. The question of fact is one exclusively for your consideration. The court would instruct you that in an action of ejectment the plaintiff recovers upon the strength of his own title. If you are satisfied from the evidence that the plaintiff is the owner of this land by purchase

from the parties who put it in—who formerly owned it—and that they have never parted with their possession by sale or transfer in any way, your verdict should be for the plaintiff for the possession of the land, and for such damages as the proof may show you the plaintiff is entitled to recover. If the evidence shall satisfy you that the defendant has a better title than the plaintiff, why, then, your verdict should be for the defendant.

"The court would instruct you that, unless the defendant has some conveyance from somebody who had a better title, he cannot hold possession of this land as against the plaintiff, provided the proof may show you that the plaintiff had a regular chain of title from the original parties who put it in, as against the plaintiff's title, if the evidence satisfies you that he has a regular chain of title, unless the defendant has shown an equal title or a better title from some one else, why your verdict should be for the plaintiff. If the evidence has not shown that, then your verdict should be for the defendant.

"Mr. Cruce: We except to the court's charge as given to the jury.

"Mr. Gilbert: I think they should be instructed to disregard the alleged verbal gift the defendant claimed.

"The Court: I don't think that amounts to anything, unless they are satisfied that it was an absolute transfer to defendants.

"Mr. Cruce: We except to that portion of the court's charge, and we ask the court to instruct the jury that if they believe from the evidence that the plaintiff, or those through whom he claims, had abandoned the premises in controversy, or if they believe they had given the lands to the defendants, or agreed upon the boundary line and agreed to move the fence on the same, defendants are entitled to the possession of the premises, and plaintiff cannot recover.

"The Court: I will not give that charge.

"Mr. Cruce: To which we except."

Objection is made to the court's instruction because it used the words in the instruction, "If the evidence shall satisfy you that the defendant has a better title than the plaintiff, then your verdict should be for the defendant."

It is urged that a plaintiff in an action of ejectment is under the ordinary rule that he must recover by the strength of his own title, and not on the weakness of his adversary's, and this is certainly the rule required in actions of ejectment. And were these parties claiming through a different source, we are inclined to think that the instruction in the form presented, as requiring the defendant to show a better title, would not correctly state the law; but where two parties claim from a common source, both deraigning their title from the same source, it is certainly incumbent upon a defendant claiming to have ownership that he have the better claim to the premises, because it alone must prevail.

"Where both parties claim under the same person, since neither of them can deny his right as between them, the elder is the better title and must prevail." Finch vs Ulman, 105, Mo. 255, 16 S. W. 863, 24 Am. St. Rep. 383; Gilliam vs Bird, 30 N. C. 280, 49 Am. Dec. 379, Christenbury vs King, 85 N. C. 229; Schwallback vs Chicago, M. & St. P. Ry. Co., 69 Wis. 292, 34 N. W. 128, 2 Am. St. Rep. 740; Renneker vs Warren, 17 S. C. 139.

But in the case at bar the defendant in his pleading claims that the grantor O. W. Seay abandoned all claim, right, or title that he had in and to the premises sued for, and permitted said land to be a part of the public domain. This was affirmative matter, and the defendant would be bound to establish this fact. The evidence of the defendant upon this point was sub-

stantially as follows;  M. C. Reynolds, one of the defendants, being sworn, testified as follows: "I was in possession of the tract of land just west of the Graham pasture, holding the same for the Duford heirs, they being Indians and the owners of said land.    When the Graham pasture was put in, and this land I held for the Duford heirs was put in, there was a space left between the two places of fifty or sixty yards.  Mr. Seay, some time in 1892, run a wire fence across the ends of this vacant strip, and built a little house, and put a man in there, who put about thirty acres in cultivation.   The section that the Duford heirs are on runs up into the Tom Graham pasture, and takes about forty acres of the Graham pasture, and it also includes this little piece of land that Mr. Seay had put in cultivation.  In July, 1898, Mr. Seay came in to my house while my boys were cutting some stove wood, and said he wanted the fence put on the section line between us; that he did not want to hold further than the section line, and was going to give it up, and abandon all that part west of the section line.  He told me that I could move the fence out and put it on the section line, and that the Duford heirs could have that land west of the section line. He also said that, when I got ready to move the fence, if I would call on him he would help me to move it onto the line.  I was busy then, and did not move the fence at that time.  There had been a man in the house on this little tract of thirty acres, and he had started a little crop there, in the spring of 1898, but had left it before Mr. Seay made this arrangement with me. I put a man in the house, as the agent of the Duford heirs and have held that ever since there.  In January, 1900, I sent my boys and hand to move the fence that Mr. Seay had agreed could be moved, and place it on the section line, which would take in this thirty-acre and narrow strip off the Graham pasture of about forty acres.  One of my boys came to the house where I was, and said that Seay was up there and had stopped them from work.  I was not very well, and was lying down.  I did

not know but that the Seays were armed, and so took my gun and started. When I got there nearly I met my other boy, who said that the Seays were not armed and I laid my gun down, and when I got up to where they were I said: 'Oscar, what are you interfering with my hands for? This land belongs to the Duford heirs. You agreed that I might put this fence up, and that they might have this land—that you did not want it—and I don't want you to interfere with my hands any more.' Mr. Seay and his brother, Jeff Seay, got on their horses and rode off, and did not make any reply to what I said. I went ahead, and completed this fence, and have had possession as agent for the Duford heirs ever since. The land is worth about thirty or forty dollars a year rent."

Upon this point, Oscar Seay, being recalled, testified as follows: "My brother Jeff and myself were at Mr. Reynolds some time in the summer of 1898, and I was talking to Mr. Reynolds about this land, and told him that if he would pay me one hundred dollars for the land west of the section line I would deed it to him or the Duford heirs, and that he could then put the fence on the section line; but I did not tell him I could not hold the land, or did not want to hold it, or that I would give it the Duford heirs, or that he could move the fence out unless he paid me for the land."

In view of this evidence, the court told the jury that the equal or better title to these premises should prevail; and we do not think in view of the particular facts of this case, that the instruction of the court was error, or, if there were error in such instruction, it was not such as to be prejudicial to the right of the defendants. The rule of law is that a legal title to land cannot be proved by parol evidence in an action of ejectment. Kirkpatrick vs Clark, 132 Ill. 342, 24 N, E. 71, 8 L. R. A. 511, 22 Am. St. Rep. 531, and note.

Here the plaintiff proved his title by a bill of sale. The defendant sought to claim from the same source on the pretext of abandonment intermixed by gift. And the court tells the jury that the better title must be shown by the parties so claiming ; and we find no error in the court's instructions; nor do we find that there was error in the courts refusing to instruct the jury, as requested by the defendant, "that if they believe from the evidence that the plaintiffs, or those through whom they claim, had abandoned the premises in controversy or if they believe they had given the lands to the defendants, or agreed upon a boundry line and agreed to move the fence on the same, the defendants are entitled to the possession of the premises, and the plaintiffs cannot recover." This instruction was entirely too broad. Either the plaintiffs' grantor abandoned these premises, and after abandonment the defendants seized them, or, as claimed by the defendants in their answer, the plaintiffs' grantor gave said lands to said Indian citizens, "and placed them in possession of same, and agreed that the fence could be placed where it now is." The plaintiffs' grantor could not do both of these things. He must have done one or the other. If the plaintiffs' grantor abandoned these premises, he must have yielded them up absolutely. If he made a gift of these premises to certain Chickasaw citizens, it was not an abandonment thereof. Abandonment of premises may not be made in favor of a particular individual or for a consideration. Stephens vs Mansfield, 11 Cal. 363. A verbal transfer of the premises would be void.

We are satisfied, on the whole case, that the jury was properly advised by the court as to the law, and it was in their province to say which of these two parties had the better title to these premises.

The evidence in the case was conflicting as to whether or not possession of the premises had ever been given to Reynolds

for Englemen and the Dufords at all. And while we think that, where one Choctaw or Chickasaw citizen puts another Choctaw or Chickasaw citizen in possession of the land of any portion of the public domain of the nation, segregated by him and to which he has a right, such gift and transfer of possession would be valid as against the world, and even as against the grantor, yet where, as in this case, the evidence shows that the alleged donor resisted the alleged donee in his effort to take manual possession, the donee thereby could not acquire any rights whatever to the premises.

There being no error ascertained in the case, the decision of the court below is therefore affirmed.

CLAYTON and RAYMOND, JJ., concur.