HELEN S. SAUERS v. J. ALLEN GIDDINGS ET AL.

*Appeal—Administrator's deed—Evidence—Adverse possession.*

1. The Court will treat as properly before it a question raised by an objection to testimony, although not sufficiently specific, where the same question is likely to arise on a second trial, and the judgment must be reversed on other grounds.

2. Act No. 20, Laws of 1867 (How. Stat. § 5678), which provides that a deed executed by an executor, administrator, or sheriff, the record thereof, or a certified copy of such record, shall be *prima facie* evidence of the regularity of all proceedings required by law anterior to such deed, is *retroactive* in its operation.

3. The provision in Act No. 315, Laws of 1865, that the "Scranton Abstract," so called, owned by Kent county, Michigan, shall have the same virtue and effect as by *present* provisions of law the records of the office of register of deeds do possess, was not intended to preclude the use of such records for *all* purposes, and with such effect, as the Legislature at any subsequent time saw fit to give to public records as evidence, but was intended to express the purpose of the Legislature to give to such abstract the same virtue and effect as only the record of deeds would possess but for that enactment.[1]

4. It is not necessary, in order to entitle one to claim title by adverse possession, that the premises should be inclosed by a fence, or that when a fence is used it should be of any particular kind; citing *Murray v. Hudson*, 65 Mich. 674; *Beecher v. Galvin*, 71 Id. 395; *Greene v. Anglemire*, 77 Id. 171.

5. Where the testimony in support of a claim of adverse possession tends to show a continuous use of the land, by cutting the grass and pasturing cattle thereon each year during the period of occupancy, in addition to planting trees upon the premises, it is a question for the jury whether such occupancy was practically continuous, exclusive, and hostile, and intended to be such by the claimant.

6. Evidence of the assessment of land to a claimant by adverse possession is admissible as tending to show such possession, and,

---

[1] See *Butler v. Railroad Co.*, 85 Mich. 247, for a case involving the effect of said abstract as evidence.

while not of any great value, its weight is for the jury; citing *Rayner v. Lee,* 20 Mich. 387; *Murray v. Hudson,* 65 Id. 676.

Error to Kent. (Grove, J.) Argued January 13, 1892. Decided January 22, 1892.

Ejectment. Defendants bring error. Reversed. The facts are stated in the opinion.

*Drury & Wolcott,* for appellants.

*Taggart, Wolcott & Ganson,* for plaintiff.

MONTGOMERY, J. This is an action of ejectment. The plaintiff recovered in the court below, and defendants allege error on the part of the trial judge in receiving certain testimony offered on the part of the plaintiff, in excluding testimony offered on behalf of the defendants, and in the instructions to the jury.

To prove a conveyance in her chain of title, the plaintiff offered an entry in the "Scranton Abstracts," so-called, showing a conveyance from Jonathan Chubb, as administrator of the estate of Jason Winslow, to E. B. Bostwick. This was objected to, and it is now urged that this deed was inadmissible to show a transfer of the interest or title previously shown in Winslow. It is insisted by the plaintiff that the objection made in the court below was not sufficiently specific. But as the question is likely to arise on another trial, and as the case must be reversed on other grounds, we shall treat the question as properly before us.

The law of 1867 (How. Stat. § 5678) provides, in effect, that, as to deeds executed by an executor, administrator, or sheriff, the deed itself, the record, or a certified copy of the record, shall be *prima facie* evidence of the regularity of all proceedings required by law anterior to such deed. It is claimed by the defendants that this statute

was not intended to apply to conveyances, like the one in question, which had been theretofore recorded;[1] but we think the title of the act, viz., "An act relative to recording deeds, mortgages, and instruments of record, and to declare the effect thereof," is sufficiently broad to include existing records as well as those thereafter to be made; and, as the enactment relates simply to a rule of evidence, there is no reason why a strained construction should be placed upon the language employed.

It is further contended, however, that, even if the original deed or the record itself would, under this statute, be evidence of the regularity of the proceedings anterior to the deed, the Scranton abstract is not, by force of the statute declaring it to be a public record, made evidence of these facts. The statute of 1865 (Act No. 315), relative to the Scranton abstract, is entitled—

"An act to declare certain abstracts of the records of the county of Kent public records;" and provides "that the said abstract be, and the same hereby is, declared to be and established as a public record, and in all the courts in this State, and in all suits and proceedings therein, * * * shall be *prima facie* evidence of the matters therein stated, *and shall have the same virtue and effect as by present provisions of law the records of the office of register of deeds do possess.*"

It is very clear that the two statutes, taken together, one declaring that a deed by an administrator, or the record thereof, shall be *prima facie* evidence of his authority, and the other that the Scranton abstract shall be taken as a public record and evidence of the facts therein stated, would constitute the entry in question *prima facie* evidence of such authority, unless the words italicized are treated as a limitation upon what precedes them. We

---

[1] Counsel for defendants cited *Mason v. Kellogg*, 38 Mich. 144; also *Bank v. Bronson*, 14 Id. 361, holding that the statute making tax deeds *prima facie* evidence of regularity was prospective, etc.; and *Ball v. Busch*, 64 Mich. 344, in which the Bronson case is cited with approval.

think that, when the title of the act is considered, such construction is too narrow. The words referred to were not intended to preclude the use of such records for all purposes, and with such effect, as the Legislature at any subsequent time saw fit to give to public records as evidence, but were intended to express the purpose of the Legislature to give to such abstract the same virtue and effect as only the record of deeds would possess were it not for that enactment. There was no error in the ruling on this point.

Error is also assigned upon the judge's charge to the jury.

The land in controversy is a strip 2 rods east and west, by 14½ rods north and south, lying directly east of lands admittedly owned by defendants. On the easterly portion of this strip a substantial fence has been maintained from 1857 to this time; a fence has also been maintained on the west; and during most of the time on the north and south. The plaintiff's claim is that it was originally used as an alley, and that its use as an alley has continued down to the time of the commencement of this suit; that persons and teams have at various times passed over the land; and that the fences at the north end of the strip, and at or near the south end, were not maintained continuously, and were so poor and low at times as not to prevent the passing of teams. The defendants' claim is that they have been in the constant and adverse possession of this land continuously from 1857 to the present time, using it every year, by mowing and grazing it, keeping stock on it, and maintaining such fences as were necessary for the use made of the land, and that during that period no other person has used the land in any way whatever, except occasionally passing over it. The defendants rested their case entirely upon

their adverse possession. The circuit judge instructed the jury as follows:

" The defendants' deed does not include the disputed ground. They, therefore, must rely upon occupancy, without color of title. And the rule in that regard is this, as I understand it from the books: The party who enters without color of title, and who relies on adverse possession only as a defense against the legal title, must show a substantial inclosure, an actual occupancy,—an actual possession,—which is definite, positive, and notorious, in order to overcome the legal title.  *   *   *   *  Now, if upon these instructions, gentlemen, you. find that the defendants, or either of them, have had that continuous, hostile, adverse, and exclusive possession of these premises, or any portion of them; if you find that they have had these premises under substantial inclosure during the period prescribed by the statute,—then your verdict will be for the defendants; if you find otherwise, your verdict will be for the plaintiff."

We think these instructions do not correctly state the law, and were calculated to mislead the jury. The court doubtless had in mind the rule which limits the right of one claiming under adverse possession, without color of title, to the land actually occupied by him. From the instructions the jury would doubtless draw the inference that the occupation which would entitle one to claim title by adverse possession could only be shown by an actual inclosure, and this of a substantial character. Such is not the law. It is not necessary that the premises should be inclosed by a fence, or that when a fence is used it should be of any particular kind. *Greene v. Anglemire,* 77 Mich. 171; *Beecher v. Galvin,* 71 Id. 395; *Murray v. Hudson,* 65 Id. 674; *Hughes v. Anderson,* 79 Ala. 214.

The court further instructed the jury as follows:

" Occasionally going upon the land by defendants, or any of them, and the cutting of grass thereon, and pas-

turing cattle thereon, and planting a few trees upon the premises, would not alone constitute such a possession as would amount to an adverse holding, without other acts clearly showing a continuous, exclusive, hostile occupancy."

This instruction is complained of, and we think, in view of the testimony in the case, was calculated to mislead the jury. The defendants' witnesses gave testimony tending to show a continuous use of the land, by cutting the grass and pasturing cattle thereon each year during the period of occupancy, in addition to planting trees upon the premises. It should have been left to the jury to say whether this occupancy was practically continuous, exclusive, and hostile, and intended to be such by the defendants.

The defendants also offered to show that a portion of the lands in question were assessed by the city to the defendants in the year 1882. We think this testimony was admissible under the former rulings of this Court, as tending to show adverse possession, and, while not of any great value, its weight would be for the jury. *Murray v. Hudson,* 65 Mich. 676; *Rayner v. Lee,* 20 Id. 387.

The judgment should be reversed, with costs, and a new trial ordered.

MORSE, C. J., McGRATH and LONG, JJ., concurred. GRANT, J., did not sit.