RUSSELL SAGE v. MARY MOROSICK.[1]

June 30, 1897.

Nos. 10,246—(79).

Adverse Possession—Evidence.
　　Evidence considered, and *held* sufficient to justify the verdict of the jury.

Appeal by plaintiff from an order of the district court for Swift county, Powers, J., denying his motion for a new trial after a verdict for defendant. Affirmed.

*Owen Morris* and *Lyndon A. Smith*, for appellant.

*E. T. Young*, for respondent.

BUCK, J.

Action of ejectment commenced February 3, 1894. Plaintiff claims under a paper title, and defendant by virtue of adverse possession. The premises in controversy are a quarter section of land in Swift county. Plaintiff is and has been the owner thereof since 1866, unless the defendant has acquired title by adverse possession.

In order to acquire title by adverse possession it is necessary that there be an actual entry upon the premises which is hostile to the true owner, and followed by a continuous dominion and appropriation of the premises to use, by one not invested with the legal title, for such a length of time as will extinguish such title, and vest it absolutely in the adverse occupant. Actual residence upon the premises is not indispensable.

[1] Reported in 71 N. W. 930.

An examination of the facts in this case becomes necessary in order to apply this rule, and see to which party, under this test, the land in controversy belongs. The plaintiff has the paper title, but never had actual possession or occupancy of the premises, and never inclosed them, nor made any improvements nor paid any taxes upon the land. The defendant does not claim under a paper title, but by reason of an actual entry, occupancy, and possession, and the performance of such acts and for such a period of time as to invest her with the legal title.

The defendant, with her several children, settled upon the land—then wild and unbroken prairie—in the spring of the year 1876, and immediately dug a cellar, over which they forthwith built a house, and then moved into the same, and during the summer of that year broke 11 acres of the land around and near the house. She also herded a cow and horse on the premises the first year, and built a barn in which she kept them the ensuing winter, together with a lot of poultry. The second year she purchased a yoke of oxen which she used on the farm, and broke 20 acres more adjoining the 11 acres broken the previous summer; and thereafter she broke 20 acres each successive year until 130 acres of the land were broken, and each year raised crops on all the land so broken. Defendant entered upon the land in the first instance claiming it as her own, and intended to live upon it with her family, and to this end she ascertained the lines or boundaries, and the second year she plowed three furrows on each line around the land except where she was prevented from doing so by water. Thereafter she used all the land within these lines for raising crops, cutting hay, and pasturage. The plowing was commenced at one of the boundary lines, and continued inside of this line upon the land, yearly, until the amount was plowed as already stated. There were no fences around the farms in that vicinity, nor any inclosure around this land except plowed furrows, and it was the usual custom for all farmers in that neighborhood to mark the boundary lines of their land by plowing furrows along such lines. This, to some extent, defined the boundaries of defendant's claim and possession.

A fence around the land was not necessary. Such is the general rule. It is sufficient if there be visible and notorious acts of owner-

ship exercised over the premises for a period of 15 years when there is a claim of ownership and continued use of the property for which it is adapted. Of course, there must be actual occupation and appropriation of the land claimed, and some acts done which will define its boundaries, so that the owner will be presumed to have had notice of the hostile act of the intruder claiming adversely, when such intruder does not claim under some written instrument defining the boundaries. Where the possession claimed was by cutting grass and pasturing cattle each year during the season, and planting trees, it was held to be evidence of a practically continuous, exclusive, and hostile possession. Sauers v. Giddings, 90 Mich. 50, 51 N. W. 265. Openly and notoriously claiming and using land in the only way it could be used without fencing or cultivation was held to establish adverse possession. Curtis v. Campbell, 54 Mich. 340, 20 N. W. 69. Cropping land, though no one was actually upon it, and nothing done thereon between harvest and recropping, was held to establish adverse possession. Cook v. Clinton, 64 Mich. 309, 31 N. W. 317.

The defendant did not own, use, or occupy any other land. She, with a large family of children, has lived continuously upon this land since 1876. It is situated five miles from timber in a new settlement, and she has pursued the course of farming and use of the land usual in that vicinity.

But the rule which requires actual possession as the act of ownership in order to constitute adverse possession is of necessity relaxed in the case of wild or uncultivated lands and lands remote from settlements. Buswell, Lim. § 252. Very much depends upon the nature and situation of the property and the uses to which it can be applied or to which it is applied, and it is sometimes difficult to lay down any precise rule adapted to all cases. But, if acts of ownership have been done upon the land, which from their nature indicate a notorious claim of property in it, and are continued for 15 years, such acts are evidence of an ouster of a former owner, and an actual adverse possession against him if the jury shall think that the property was not susceptible of a more strict or definite possession than had been so taken and held. Ewing v. Burnet, 11 Pet. 41.

The question whether there has been actual possession for the

purpose of establishing title by adverse possession under the statute of limitations is usually one of fact for the jury. Village v. Wadsworth, 48 Minn. 402, 51 N. W. 377. Of course, there must be such facts proven in the case as will reasonably warrant the jury in finding that the intruder has exercised such acts of possession, dominion, and ownership over the land in controversy as will constitute an ouster and disseisin of the true owner with intent on the part of the intruder to possess the land for himself.

We think that the defendant did such acts comporting with the adverse management of the land as to apprize the owner of the paper title that she was in its exclusive possession to such an extent as to justify its submission to the consideration of the jury, and that the verdict should not be disturbed.

Some criticism is made because she has never paid any taxes upon the premises, but it does not appear that any were ever assessed or paid by any one. Certainly, the plaintiff cannot, with very good grace, indulge in this contention, for he alleges that he has owned the premises since 1866, more than 30 years, and it does not appear that he has ever paid or offered to pay any taxes upon this land.

The order denying the motion for a new trial is affirmed.