LINDL, and another, Plaintiffs-Respondents, v. OZANNE, and another, Defendants-Appellants.†

Court of Appeals, District II

*No. 77–502.  Submitted on briefs July 18, 1978.—*
*Decided September 1, 1978.*
(Also reported in 270 N.W.2d 249.)

† Petition to review denied November 15, 1978.

For the appellant the cause was submitted on the brief of *Vaudreuil & Vaudreuil* of Kenosha.

For the respondent the cause was submitted on the brief of *Donald J. Bauhs* of Kenosha.

Before Voss, P.J., Brown, J., and Bode, J.

VOSS, P.J.    This is a suit in adverse possession between the owners of adjacent farm land.  Judgment was entered granting title through adverse possession in the disputed parcel to Richard and Helen Lindl (Lindls). Ward and Elizabeth Ozanne (Ozannes) appeal.

The Lindls brought suit to establish title through adverse possession for more than twenty years not founded upon a written instrument under sec. 893.10(2), Stats. The parcel in dispute is located on the western edge of the Lindls' property.  The Ozannes have record title to the parcel as part of their farm which is to the north and west of the Lindl property.

The parties stipulated to their respective chains of title. In 1937 both farms were owned by Charles and Cinda Dorey. The land which is now the Ozanne farm, including the disputed parcel, was transferred in 1937 to Minnie Ozanne in satisfaction of a mortgage held by her on the entire Dorey farm. Shortly thereafter, she erected a fence around her property but failed to include the disputed 0.45 acre parcel within it. The disputed parcel thus remained attached to the Doreys' property. Minnie transferred her land to Donald and Eldora Ozanne in 1947. The current owners, Ward and Elizabeth Ozanne, acquired the farm from Donald and Eldora in 1957. The Lindls acquired their farm in 1972 from the Doreys' heirs who had acquired it six months earlier from the estate. The fence remained in place throughout these transfers, but the Lindls' deed specifically excluded the land transferred to Minnie Ozanne in 1937. At all relevant times, the disputed parcel was rented and farmed by Leverett Leet (Leet) along with the land to which the Doreys retained titled.

Sec. 893.08, Stats., provides:

"**Extent of possession not founded on writing, judgment etc.** When there has been an actual continued occupation of any premises under a claim of title, exclusive of any other right, but not founded upon any written instrument or any judgment or decree, the premises so actually occupied, and no other, shall be deemed to be held adversely."

Sec. 893.09, Stats., provides:

"**Adverse possession, what is.** For the purpose of constituting an adverse possession by a person claiming title, not founded upon some written instrument or some judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only:

"(1) When it has been protected by a substantial inclosure.

"(2) When it has been usually cultivated or improved."

The trial court found that the disputed parcel had been protected by a substantial inclosure and that it had been cultivated for more than twenty years by the Doreys' and the Lindls' tenant. The court concluded that the Lindls had thereby established their title in the parcel pursuant to sec. 893.10(2), Stats., which provides:

"(2) Any person who in connection with his predecessor in title has been in the uninterrupted adverse possession of any land for 10 years under a conveyance recorded in the office of the register of deeds of the county where land lies, or who has been in such possession for 20 years, otherwise than under such conveyance, may commence and maintain an action to establish his title against any defects claimed to exist. . . ."

The issues raised are 1) whether there was sufficient evidence to support the trial court's findings and 2) whether it was proper to tack the Doreys' possession onto that of the Lindls to establish the requisite twenty years of adverse possession.

The first issue is readily disposed of. The Ozannes offered no testimony and introduced only the deed to Minnie Ozanne and the final judgment of the Dorey estate. The Lindls readily conceded that these established record title to the parcel in the Ozannes. The testimony of Leet and Lindl established that the fence had been erected in 1937 and was not removed until November 1975, and that Leet had rented and cultivated the parcel throughout this period. No adverse claim was made by the Ozannes or their predecessors until November 1975.

Where adjacent landowners have openly used land up to a fence which has been regarded as the true line between their properties for at least twenty years, the general rule is that title to any land between the fence and the true line is established by adverse possession. *Northwoods Development Corp. v. Klement,* 24 Wis.2d 387, 392, 129 N.W.2d 121, 123 (1964); *Weise v. Swersinske,* 265

Wis. 258, 261, 61 N.W.2d 312, 313 (1953) ; *Menzner v. Tracy,* 247 Wis. 245, 251–52, 19 N.W.2d 257, 260 (1945). Adverse possession is found where the beneficiary of the discrepancy only intended to claim up to the true line as long as he claimed up to the fence and did not condition his claim on the correspondence of the fence with the true line. *Northwoods Development,* 24 Wis.2d at 395–96, 129 N.W.2d at 124–25. The testimony of both Leet and Lindl indicates that they were ignorant of the discrepancy between the fence and the true line but that they regarded the fence as the true line and that rent was paid accordingly. Therefore, these facts are sufficient to establish continuous, open, notorious and adverse use within the meaning of sec. 893.08 and 893.09, Stats.

The remaining question concerns the propriety of tacking the Doreys' possession onto that of the Lindls' in order to satisfy sec. 893.10(2), Stats. The acts of possession of Leet, as tenant, are deemed to be those of the Doreys and the Lindls, as landlords, for purposes of establishing adverse possession. Sec. 893.11, Stats; *Polanski v. Town of Eagle Point,* 30 Wis.2d 507, 517, 141 N.W.2d 281, 284 (1966). The adverse possession of predecessors in title may be tacked on to satisfy the twenty year requirement even though the disputed parcel was not included in the meets and bounds description of the deed if *possession* of the parcel was transferred. *Mielke v. Dodge,* 135 Wis. 388, 115 N.W. 1099 (1908) ; *Illinois Steel Co. v. Budzisz,* 106 Wis. 499, 81 N.W. 1027, 82 N.W. 534 (1900). The continued occupation of the parcel by Leet and the payment of rent to the Lindls following their purchase from the Dorey heirs is sufficient evidence of a transfer of that possession.

None of the above cases, however, involved a situation like that presented here where the adverse possession to be tacked onto the Lindls' possession is that of the grantor of the Ozannes' predecessor in title. The trial court

concluded that a grantor can assert adverse possession against his grantee. Although adverse possession by a grantor has not been found by the Wisconsin Supreme Court, we confirm the trial court's conclusion.

The general rule was stated a century ago in *Brinkman v. Jones,* 44 Wis. 498 (1878) where the court stated:

". . . There would seem to be no good reason why the possession of a grantor may not be hostile to his deed, provided it be such as to give his grantee notice that he claims in hostility to his grant; nor why such hostile possession may not ripen into an adverse and perfect title, and bar the grantee from recovering the possession under the statute of limitations. The cases last above cited decide that a grantor may hold so adversely against his grantee. We have no doubt of the justice of the rule as stated by the counsel for the respondent, when the occupation has continued but a short time after the date of the deed, or when, though continued for a longer time, it is not inconsistent with the title purporting to be conveyed by the deed. We are, however, of the opinion that when the possession has been for a long period, the presumption of a claim of right hostile to the title granted does arise in every case where such possession is inconsistent with the rights of the grantee, and that in such case a court or jury might find the possession adverse from the nature of the possession, without proof of an express declaration on the part of the occupant that he claimed to hold in hostility to his grant. . . ." *Brinkman,* 44 Wis. at 525.

The rule was further elaborated in *Schwallback v. Chicago, M. & S. P. R. Co.,* 69 Wis. 292, 299, 34 N.W. 128 (1887) as:

"It has been held that whenever both parties claim title under the same person, neither of them can deny his right, and as between them the elder is the better title and must prevail; and hence, that the estoppel of the grantor to deny his grantee's title arising from his deed, extends to all persons who claim from or under the grantor by title acquired subsequent to the grant, whether by deed or otherwise. *Gilliam v. Bird,* 8 Ired. L. 280; 49 Am. Dec. 379, and cases cited in the note. This must, at least, be

so presumptively. Any of such subsequent grantees, desiring to destroy such presumption and take and hold that strip of land by adverse possession to which he had no title by virtue of his deed, though described in it, was bound first to disseize the rightful owner before he could set the statute running in his favor. As to what constitutes such disseizin is well stated by PARSONS, C. J., in the leading case of *Kennebeck Purchase v. Springer,* 4 Mass. 416; 3 Am. Dec. 227, where he said: 'When a man is once seized of land, his seizin is presumed to continue until a disseizin is proved. . . . When a man not claiming any right or title to the land shall enter on it he acquires no seizin but by the ouster of him who was seized, and he is himself a disseizor. To constitute an ouster of him who was seized, the disseizor must have the actual, exclusive occupation of the land, claiming to hold it against him who was seized, or he must actually turn him out of possession. . . . To constitute a disseizin of the owner of uncultivated lands by the entry and occupation of a party not claiming title to the land, the occupation must be of that nature and notoriety, that the owner may be presumed to know that there is a possession of the land adverse to his title; otherwise a man may be disseized without his knowledge, and the statute of limitations may run against him, while he has no ground to believe that his seizin has been interrupted.' " *Schwallback,* 69 Wis. at 299–300, 34 N.W. at 131.

In *Brinkman* the deed under which the grantee claimed was held to be a mortgage so that grantor's possession constituted notice of his interest in the property. In *Schwallback* the court found insufficient evidence of the requisite disseizin where the grantor had sold a right of way to the railroad but he and his successors continued to farm the land. The railroad did not make use of its right of way but recorded its deed in which the grantor agreed for himself and his heirs and assignees to build and maintain fences along the right of way. The fences were never built and the railroad was never notified of any adverse claim. In the present case, a fence was built and the neighboring Ozannes had continual notice of the Doreys' and Lindls' use of the land up to the fence.

In *Riha v. Pelnar,* 86 Wis. 408, 57 N.W. 51 (1893), insufficient evidence of ouster was found where the grantor sold part of his land but did not alter the fence line and continued to cut timber and cultivate the land sold. In *McCormick v. Herndon,* 86 Wis. 449, 56 N.W. 1097 (1893), it was said that after an absolute conveyance a grantor continues in possession as a tenant of his grantee until he explicitly disclaims the relationship. In that case, however, the deed was held to be a mortgage and the court was merely disposing of an inconsistent adverse possession claim. In *Munkwitz Realty & Inv. Co. v. City of Milwaukee,* 143 Wis. 230, 126 N.W. 542 (1910), *Schwallback, Riha,* and *McCormick* were cited to support a finding that when a grantor remains in possession he is not a trespasser but is liable for reasonable rental of the premises. No claim of adverse possession was raised since the grantor's occupancy was less than one year.

In each of these later cases, the court did not disagree with its statement in *Brinkman, supra,* that a grantor can reacquire land through adverse possession. Instead, the court concluded that the evidence did not rebut the presumption that he retains possession in subordination to his grantee's title. Annotation, "Grantor's Possession as Adverse Possession Against Grantee," 39 A.L.R. 2d 353, 357–61, 374–76, 382–84 (1955) collects cases in which the presumption has been overcome. The two cases most closely on point are *Salter v. Cobb,* 264 Ala. 609, 88 So.2d 845 (1956) and *Rider v. Pottratz,* 246 Ore. 454, 425 P.2d 766 (1967). In both, the grantor conveyed part of his land, and the grantee or his successor erected a fence or wall which left part of the conveyed land on the grantor's side. The grantors used the land up to the fence believing that the fence marked the true boundary. The grantor's possession was held to be adverse and title passed to them notwithstanding the fact that the record title was in the grantee or his successors. As the Oregon court in *Rider, supra,* 425 P.2d at 767 concluded, "[t]his

presumption of subservient holding has no basis in fact when the grantor's possession is continued under the belief, mistaken though it be, that the area in question was not included in the grant."

In this case the fence as erected was regarded as the true boundary by all parties until 1975. The Doreys' and Lindls' possession was open and notorious and under a claim of right. The presumption against a grantor's adverse possession of land conveyed to his grantee was overcome by the inclosure, cultivation, and rental of the disputed parcel continuously from the time of the conveyance and erection of the fence in 1937. Judgment for the Lindls under sec. 893.10(2), Stats., was therefore proper.

*By the Court.*—Judgment affirmed.