Raymond KLINEFELTER, and Eleanor S. Klinefelter, Plaintiffs-Respondents,

v.

Norma DUTCH, Defendant,

Charles A. STOCK, and Kathleen A. Stock, Defendants-Appellants.

Court of Appeals

*No. 90-1583-FT. Submitted on briefs October 5, 1990.—Decided February 21, 1991.*

(Also reported in 467 N.W.2d 192.)

For the defendant-appellant the cause was submitted on the brief of *James A. Beaudry* of Hales Corners.

For the plaintiffs-respondent the cause was submitted on the briefs of *Fred D. Hollenbeck* of *Curran, Hollenbeck & Orton, S.C.* of Mauston.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

DYKMAN, J.   Charles and Kathleen Stock appeal from a judgment of adverse possession awarding a portion of their real estate to Raymond and Eleanor Klinefelter.[1] The issue is whether, pursuant to sec. 893.25, Stats., the Klinefelters had "occupied" the disputed parcel of wooded land and "[p]rotected it by a substantial enclosure."[2] We conclude they did and therefore affirm that portion of the trial court's judgment. We

[1] The court also found Norma Dutch, a co-defendant, liable to the Stocks for the value of the 2.3 acres in dispute. Dutch had conveyed the approximately forty acre lot to the Stocks in 1988. Dutch does not appeal.

[2] Section 893.25, Stats., provides in part:

(1)   An action for the recovery or the possession of real estate and a defense or counterclaim based on title to real estate are barred by uninterrupted adverse possession of 20 years . . ..

(2)   Real estate is possessed adversely under this section:

(a)   Only if the person possessing it, in connection with his or her predecessors in interest, is in actual continued occupation under claim of title, exclusive of any other right; and

(b)   Only to the extent that it is actually occupied and:

1.   Protected by a substantial enclosure; or

2.   Usually cultivated or improved.

30

reverse, however, that portion of the judgment awarding the Klinefelters their actual attorney fees.

## I. BACKGROUND

The Klinefelters and the Stocks own adjacent forty acre parcels in Juneau County. The Klinefelters purchased their land in 1967. The Stocks' land is to the east of the Klinefelters' land. In 1934, a prior owner of the Klinefelters' land sold a one-rod wide piece off its eastern edge to a farmer who owned land to the north and south of the Klinefelters' land. The farmer fenced the strip, and used it as a lane to run cattle between his two pieces of property. Unfortunately, the farmer installed fence lines about seventy-five feet east of the correct property line.[3] The strip is now owned by a non-party to this action, Margaret Kelly. The disputed parcel of property, about 2.3 acres, is located between the Klinefelters' property and the Kelly strip.

Shortly after the Stocks' purchased their land in 1988, they had it surveyed, and discovered that the Kelly strip and the land involved in this action encroached on the western portion of their land. The Klinefelters did not challenge the survey, but asserted that as a result of their use of the land since 1967, they had acquired it by adverse possession.

After some initial skirmishing, during which some of the Klinefelters' "No Trespassing" signs were removed and a tree stand was erected by the Stocks on the disputed parcel, the Klinefelters began this quiet title action.[4]

---

[3]This figure is an average. The strip varies from about 50 to about 100 feet in width.

[4]The Klinefelters also sought damages for trespass. The trial

Eleanor Klinefelter testified that in February of 1967 she first saw the property that she and her husband later purchased. She walked around the south and east sides of the farm. She testified: "Well, I regarded the fence line as our line, and I thought, well, this is . . . what we own if we bought it." She testified that she continued to assume the fence line marked the lot line until the property was surveyed in 1988.

Eleanor Klinefelter described the use that she and her husband had made of the disputed parcel. They planted white pine trees, cut and cleared an area for a new roadway, and cut wood on the disputed parcel. She also noted that their predecessors in title had planted Norway pines. Raymond Klinefelter hunted deer and squirrels there every year, and cleaned out brush every winter. They placed five "No Trespassing" signs near the fence line. They drove through the parcel to show their farm to friends about three times a year, and repaired a washed out area of their road there. They used the area to pick blackberries and for hiking.

Raymond Klinefelter testified that, pursuant to an agreement preexisting his purchase of the land, he had repaired the northern half of the fence along the strip, a distance of about 650 feet. He positioned a piece of a telephone pole midway along the line. He stated that, as of 1988, the portion of the fence that he was responsible for was sufficient to contain cattle.

The trial court concluded that the Klinefelters had established their claim that they had adversely possessed the disputed parcel for over twenty years, and, under sec. 893.25, Stats., were therefore entitled to a judgment quieting title in them. The court also found that the

court found no damages for the Stocks' trespass. The Klinefelters do not appeal this determination.

Klinefelters were entitled to actual attorney's fees of $1,130.99. The Stocks appeal.

## II.  STANDARD OF REVIEW

We sustain a trial court's findings of fact unless they are clearly erroneous. Section 805.17(2), Stats. The legal significance of those facts, however, is a question of law, which we review de novo. *Benjamin Plumbing, Inc. v. Barnes,* 156 Wis. 2d 276, 279-80, 456 N.W.2d 628, 630 (Ct. App. 1990). Applied here, the trial court's determinations as to what the parties did, and how the land appeared, are facts. Whether, given those facts, the Klinefelters adversely possessed the disputed strip is a question of law.

## III.  ADVERSE POSSESSION

The Stocks contend that the Klinefelters did not satisfy the "actual continued occupation" requirement of sec. 893.25(2)(a), Stats. A similar scenario was examined by the court in *Lindl v. Ozanne,* 85 Wis. 2d 424, 270 N.W.2d 249 (Ct. App. 1978). In *Lindl,* the Ozannes' predecessor in title had fenced the land on her farm, but had mistakenly omitted a 0.45 acre parcel in the enclosure. *Id.* at 426, 270 N.W.2d at 250. The fence remained in place and the land was used for more than twenty years prior to the Lindls' quiet title action. *Id.* We said:

> Where adjacent landowners have openly used land up to a fence which has been regarded as the true line between their properties for at least twenty years, the general rule is that title to any land between the fence and the true line is established by adverse possession.

*Id.* at 427, 270 N.W.2d at 251 (citations omitted).

The trial court found that the Klinefelters "occupied the disputed part of the property openly [and] notoriously for the 20 year period, and that they promptly resisted attempts by the defendant . . . to occupy the property after the conveyance to the defendant by Mrs. Dutch." Although this is more of a finding of ultimate fact, the trial court based its finding on the testimony that we have recited. The trial court's findings are not clearly erroneous, and we accept them. We conclude the "actual continued occupation" requirement of sec. 893.25(2)(a), Stats., was satisfied.

Section 893.25(2)(b), Stats., also requires that the disputed parcel be "[p]rotected by a substantial enclosure . . .."[5] Thus, the court in *Droege v. Daymaker Cranberries, Inc.,* 88 Wis. 2d 140, 145, 276 N.W.2d 356, 358 (Ct. App. 1979), found several stakes with ribbons placed along a 500-foot border to be insufficient. Likewise, in *Seybold v. Burke,* 14 Wis. 2d 397, 404–06, 111 N.W.2d 143, 147–48 (1961), the court concluded a fence which had fallen into such disrepair that several witnesses testified it was non-existent was not a substantial enclosure.

In *Illinois Steel Co. v. Bilot,* 109 Wis. 418, 446, 85 N.W. 402, 408 (1901), the supreme court explained the purpose of the "substantial enclosure" requirement:

An inclosure having no purpose of physical exclusion of outside interferences—a mere furrow turned with a plow around the land (*Sage v. Morosick,* 69 Minn. 167), or a line marked by cutting away the brush (*Worthley v. Burbanks,* 146 Ind. 534), or a fence opened so as to admit outside disturbers (*Sauers v. Giddings,* 90 Mich. 50),—may be sufficient under the

---

[5]Alternatively, sec. 893.25(2)(b), Stats., requires that the disputed parcel be "[u]sually cultivated or improved."

circumstances to indicate, as a matter of fact, the boundaries of the adverse claim; and such boundaries may be evidenced satisfactorily to a jury by any means reasonably calculated to clearly suggest the same or suggest inquiry in regard thereto that would probably readily and clearly lead to a discovery of the truth. It is not necessary that such indications be sufficient to evidence constantly, by mere observation and without inquiry, the precise extent of an apparent hostile occupancy. If the claimant "raises his flag and keeps it up," so to speak, sufficiently to attract the attention of the true owner to the situation, in view of the circumstances of the invasion, as a hostile claim of title, knowledge of such owner may be presumed as a fact, on the general principle that what a person ought to know under the circumstances may be held to be within his knowledge regardless of the actual fact. [Citations omitted.]

This explanation of the purpose of the "substantial enclosure" requirement remains the law today. One who discovers a fence on his or her land is put on notice that another may claim an interest in that land. The import of the notice must alert a reasonable person of a possible border dispute.

The trial court found that "at least the north half of the fence line" along the east side of the disputed parcel was a substantial enclosure. Photographs admitted in evidence support this finding.

The photographs indicate the south half of the fence is not nearly as substantial. Trees have grown along the fenceline, and in some areas the wire is down. Raymond Klinefelter admitted that that half was not sufficiently well-fenced to contain cattle, although it was when he purchased the farm and for several years thereafter. However, at least two "no trespassing" signs were

located in that area, and a photograph shows that the south end of the Klinefelter's fence was marked with a wooden fence post, to which several strands of wire were attached in a way which leaves no doubt that the post and wire were intended as a fence.

We agree with the trial court's conclusion that the Klinefelters maintained a substantial enclosure, within the meaning of *Illinois Steel Co.* Indeed, Charles Stock admitted that he had gone to the west edge of his property before he purchased it, and looked everything over. He had measured the east-west dimension of the property and had observed the fence in question. He testified "there was no problem, we just knew the fence was not the lot line."

Relying on *Pierz v. Gorski,* 88 Wis. 2d 131, 276 N.W.2d 352 (Ct. App. 1979), the Stocks argue that because the disputed property was "wild land," they should not be held to notice of the fence and the "no trespassing" signs of the Klinefelters. *See id.* at 137, 276 N.W.2d at 355 (citing 2 C.J.S. *Adverse Possession* sec. 44 (1972)). *Pierz* did not define the characteristics of "wild lands." However, in 2 C.J.S. *Adverse Possession* sec. 44, the authors stated:

> Apart from statute, land is not susceptible of adverse possession while it remains completely in a state of nature; and while actual residence or occupancy is not essential to show actual possession, it is necessary that possession be shown by acts of ownership, consistent with the nature of the land, changing to a substantial extent the condition of the land from a wild to an inclosed or cultivated state. [Footnotes omitted.]

The photographs introduced at trial show that the land in question was not "in a state of nature." A one-

36

rod cattle lane, though now in disuse, "no trespassing" signs, steel and wood fence posts and a section of a telephone pole are inconsistent with land in a state of nature. In addition, the quoted section from the C.J.S. article excepts the effect of statutes from the article's general rule.

Section 893.25, Stats., makes no distinction between "wild lands" and any others. Whether land is wild or not, a substantial enclosure plus "actual continued occupation" under a claim of right results in adverse possession if maintained for twenty years.

Adverse possession issues are usually mixed questions of law and fact. *Perpignani v. Vonasek,* 139 Wis. 2d 695, 728, 408 N.W.2d 1, 14 (1987). We have concluded that the facts found by the trial court are supported by the record and are not clearly erroneous. We therefore accept those facts, together with the facts apparent from the photographic exhibits, and conclude, as did the trial court, that the Klinefelters showed that they were entitled to a judgment quieting title to the disputed parcel in them.

## IV. ATTORNEYS FEES

The Stocks argue that the trial court erred by awarding the Klinefelters their actual attorney fees. We agree. Under the American rule, a prevailing litigant is not entitled to collect attorney fees from the opposing party, absent contractual or statutory provisions authorizing recovery. *Watkins v. LIRC,* 117 Wis. 2d 753, 758, 345 N.W.2d 482, 485 (1984). Section 814.02(2), Stats., allows costs not exceeding $100 in "equitable actions and special proceedings." *See also* sec. 814.04, Stats. The Klinefelters cite no authority for the trial court's award

of fees. *See State v. Shaffer,* 96 Wis. 2d 531, 545–46, 292 N.W.2d 370, 378 (Ct. App. 1980). We therefore reverse the award of attorney fees.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings consistent with this opinion.