Robert A. Kron and Nancy Kron Sievers, Plaintiffs-Respondents,
v.
Harry Demorest and Black Dog Properties, a Partnership, Defendants-Appellants.
No. 04-0270.
Court of Appeals of Wisconsin.
Opinion Filed: December 14, 2004.
Before Cane, C.J., Hoover, P.J. and Peterson, J.
¶1 PER CURIAM.
Harry Demorest and Black Dog Properties (hereinafter, Demorest) appeal a judgment in this action arising out of a boundary dispute. Demorest argues that the trial court erroneously determined that the Nelson survey located an accurate boundary. Alternatively, he contends the trial court erroneously concluded Demorest failed to prove the elements of adverse possession. We reject his arguments and affirm the judgment.
¶2 Robert Kron and Nancy Kron Sievers (hereinafter, Kron) own property adjacent to Demorest on Madeline Island. The disputed area consists of approximately two acres with about 165 feet of lakeshore between the two properties. Kron obtained title in 1992 through an inheritance. A number of experts testified at trial that the calls from Kron's legal description were indefinite and ambiguous.
¶3 Kron's parents had the property surveyed in 1979 by Larry Nelson, a registered land surveyor. At that time there was no dispute as to any of the boundary lines. The 1979 Nelson survey located Kron's eastern boundary to coincide with an old fence line. Nelson testified to the process he used to complete his survey and, based upon his research and field evidence, he was satisfied he located the accurate boundary.
¶4 Demorest obtained title through a 1986 conveyance. Demorest testified that he hired three surveyors over the years, and that two told him that a survey map could not be completed because the point of beginning in his legal description could not be located. Also, Nelson testified that he was unable to locate the "crib of the bridge" referenced in Demorest's deed. However, Demorest offered his evidence, including expert testimony of surveyor Dan Holman, to support his claim of title.
¶5 The parties' dispute arose in 1997. Before that time, neither party encountered the other on the disputed parcel and neither noticed any of the other's activities on the parcel. The trial court found that both parties' legal descriptions were ambiguous and relied on Nelson's 1979 survey to determine the boundary.
¶6 Demorest argues that the trial court's determination of the boundary is unsupported by the record and, therefore, is clearly erroneous. Demorest describes the parties' chains of title, starting with conveyances by their common grantor in 1892. He argues that Holman's survey disproves Nelson's conclusions. Demorest contends that Holman specified a point of beginning, while Nelson relied on inaccurate assumptions. He further claims Nelson's approach "casts serious doubts as to the credibility of Larry Nelson's survey and as to Krons' application of the Demorest description."
¶7 Demorest also argues that his deed's legal description reference to a surveyor's monument "underpins the credibility of the western boundary shown in the Holman survey." In reference to a pipe that Nelson relied upon, Demorest argues: "It is incredible that this alleged pipe would constitute the stake in the 1906 description and would have survived from 1906 to 1979 [given] the changes and plowing in the roadway where it was allegedly located." Demorest points to inconsistencies in Nelson's testimony and claims that "[t]hese inconsistencies in his testimony raise serious questions as to his credibility regarding his claimed point of beginning."
¶8 Demorest's contentions essentially attack the trial court's assessment of weight and credibility of the testimony and argue his interpretation of the facts. The resolution of a boundary dispute presents a question of fact for the trial court. See Beasley v. Konczal, 87 Wis. 2d 233, 239-40, 275 N.W.2d 634 (1979). We do not overturn findings of fact unless clearly erroneous. WIS. STAT. § 805.17(2).[1] As long as the facts could be reached by a reasonable factfinder based upon the evidence presented, a reviewing court is required to accept them. Lellman v. Mott, 204 Wis. 2d 166, 170-71, 554 N.W.2d 525 (Ct. App. 1996). We review the record to locate evidence to support the trial court's findings, not for evidence to support findings the court did not make. Estate of Dejmal, 95 Wis. 2d 141, 154, 289 N.W.2d 813 (1980). Here, the trial court was entitled to conclude that Nelson's testimony deserved greater weight and credibility. The weight and credibility to be given to the opinions of expert witnesses are uniquely within the province of the fact finder. Bloomer Housing Ltd. P'ship v. City of Bloomer, 2002 WI App 252, ¶12, 257 Wis. 2d 883, 653 N.W.2d 309. Such deference to the trial court's determination of the credibility of witnesses is justified because of the "superior opportunity of the trial court to observe the demeanor of witnesses and to gauge the persuasiveness of their testimony." Kleinstick v. Daleiden, 71 Wis. 2d 432, 442, 238 N.W.2d 714 (1976). Based upon our deferential standard of review, we are unable to conclude that the trial court's finding as to the boundary location was clearly erroneous.
¶9 Next, Demorest argues that the trial court erroneously concluded that his evidence failed to support a claim of adverse possession. The trial court found he failed to meet the exclusivity element. In Keller v. Morfeld, 222 Wis. 2d 413, 416-17, 588 N.W.2d 79 (Ct. App. 1998), we discussed the requisites of an adverse possession claim:
Persons seeking to establish title to property by adverse possession must show that theyand/or their predecessorsin-titlehave used the disputed property in a "hostile, open and notorious, exclusive and continuous manner" for at least twenty years. Leciejewski v. Sedlak, 110 Wis. 2d 337, 343, 329 N.W.2d 233, 236 (Ct. App. 1982). See also § 893.25, Stats. And in calculating the twenty-year period, the adverse possession of predecessors in title may be "tacked on" to that of the present claimant. Lindl v. Ozanne, 85 Wis. 2d 424, 428, 270 N.W.2d 249, 251 (Ct. App. 1978). (Footnote omitted).
¶10 In order to constitute adverse possession against the title of the true owner, "an adverse claim must be sufficiently open and obvious, both as to the fact of possession and its real adverse character, to apprize the true owner if in charge of the property and in the exercise of reasonable diligence of the fact and of an intention to usurp the possession of that which in law is his [or her] own." Allie v. Russo, 88 Wis. 2d 334, 343-44, 276 N.W.2d 730 (1979) (citation omitted). "There must be actual visible means by which notice of the intent to exclude is given to the true owner." Id.
¶11 The record supports the trial court's determination. At trial, Kron described the disputed parcel as "vacant land." He lived approximately two miles away and drove past it four or five times a day. He testified that he is on the property on a regular basis and usually walked all four corners during the hunting season. Although the culvert was later torn out and replaced by the county, Kron stated that he had put in the culvert and driveway in 1992. Before Demorest owned the adjacent property, Demorest's predecessor in title acquiesced in Kron's parents' request to remove a junked car and logs from the disputed parcel. Although Kron knew that people occasionally used the beach and children played there, he never noticed Demorest using the disputed parcel until the dispute arose in 1997. He did not notice Demorest's "No Trespassing" signs until six months before trial.
¶12 Demorest, nonetheless, claims that the evidence of his own exclusive use was overwhelming and undisputed. He testified that he brushed out the property and walked his dog there. His wife also walked it and his daughter and her friends played on it. He mowed trails with his tractor and built a storage shed, which he removed in 2002. For ten winters, he stored up to five boats on it, including one thirty-six feet long, visible from the road. He claimed to have posted "No Trespassing" signs in the summer of 1987 and maintained them until trial.[2] He also rented portions of the parcel to campers.
¶13 Kron's and Demorest's testimony were in sharp contrast. In its role as fact-finder, the trial court was entitled to resolve the conflicting testimony. The trial court could accept Kron's testimony that he never noticed Demorest using the disputed parcel until this dispute developed in 1997. Based on Kron's testimony, the court was entitled to conclude that "[n]one of the acts described, however, significantly altered the character of the land in a manner which would give a reasonably diligent landowner notice of adverse possession." Pierz v. Gorski, 88 Wis. 2d 131, 138, 276 N.W.2d 352 (Ct. App. 1979). The court could also have disbelieved Demorest's testimony as to the extent of his use and inferred that whatever activities he engaged in were insufficient to constitute "actual visible means ... which gives notice of exclusion from the property to the true owner or to the public and of the defendant's domination over it." Burkhardt v. Smith, 17 Wis. 2d 132, 138, 115 N.W.2d 540 (1962).
¶14 In any event, by his own admission, Demorest's activities were carried on since 1986, less than the twenty-year requisite. Demorest fails to point to any evidence of adverse possession of his predecessors in title, except to say that the previous owner represented his boundary to include the disputed parcel.[3] Therefore, we are satisfied that the trial court could reasonably conclude that Demorest failed to meet the elements of adverse possession.
By the Court.  Judgment affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Demorest testified at trial, "Well, some of them weathered. One of them fell down. But the answer is, yeah, I maintained them. ... I'm not aware of when it went down. But, I don't check them every week but, you know, I'm out there walking my dog, built trails for my daughter."
[3] In his reply brief, Demorest also refers to "Jean Uecker's letter" without mentioning whether this letter was admitted into evidence. The clerk's exhibit list indicates that the trial court denied admission of this letter into evidence. Demorest does not challenge the trial court's evidentiary ruling. Because on appeal we do not consider evidence that was not admitted at trial, see Jenkins v. Sabourin, 104 Wis. 2d 309, 313-14, 311 N.W.2d 600 (1981), Demorest's reasoning is unpersuasive.