**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 4, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2020AP2114-FT**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019FA162

**IN COURT OF APPEALS
DISTRICT II**

IN RE OF THE MARRIAGE OF:

THOMAS G. HIGGINS,

    PETITIONER-APPELLANT,

 V.

JENNIFER S. HAHN F/K/A JENNIFER S. HIGGINS,

    RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Walworth County: DAVID M. REDDY, Judge. *Affirmed.*

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Thomas Higgins appeals from a circuit court order denying his WIS. STAT. § 806.07(1)(c) (2019-20)[1] motion to reopen the judgment divorcing him from Jennifer Hahn because she did not disclose her true financial condition before the parties settled the financial aspects of their divorce. Because the circuit court did not misuse its discretion when it denied Higgins's motion, we affirm.

¶2 As a threshold matter, we agree with Hahn that Higgins's appellate briefs do not comply with the Rules of Appellate Procedure because they do not contain sufficient citations to the record as required by WIS. STAT. RULES 809.19(1)(d) and (e). "We have no duty to scour the record to review arguments unaccompanied by adequate record citation." *Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256.[2] The appendix to the appellant's brief also lacks record references and violates the Rules of Appellate Procedure. RULE 809.19(2)(a).

¶3 The dispute in this case arises from the valuation of Hahn's 401k retirement account for purposes of the property division. In a WIS. STAT. § 806.07(1)(c) motion seeking relief from the property division, Higgins claimed that Hahn did not disclose the true value of her 401k account for their October 2019 mediation. At an early hearing on Higgins's § 806.07(1)(c) motion, Hahn looked up the value of her 401k as of the mediation date and revealed that it was $1.5 million. In light of this increased value, Higgins sought an additional share

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Generally, we only reach the merits of the arguments for which Hahn's respondent's brief provides record citations.

of Hahn's 401k, which was valued at $1.3 million in April 2019 and $1.1 million in the mediation spreadsheets, as further discussed below.

¶4     Several hearings were held on Higgins's WIS. STAT. § 806.07(1)(c) motion to reopen the property division. For purposes of the motion, the parties agreed that the 401k's value should have been set as of the October 2019 mediation date.

¶5     The mediator testified that he did not recall if Hahn provided him with an updated financial disclosure statement at the mediation, and he only had the materials provided to him on October 2, 2019, the day before mediation. The mediator had almost no notes from the mediation, and he did not recall many of the details of the mediation. However, he did recall spending most of the time addressing the parties' disputes over the disposition of personal property.

¶6     Higgins testified that he did not know if his counsel provided an updated financial statement to the mediator and Hahn's counsel before the mediation. At the time of the mediation, Higgins knew of the $1.3 million 401k valuation, but he learned of the $1.5 million valuation after the judgment of divorce was entered.

¶7     Hahn testified that she filed her first financial disclosure statement in April 2019 and reported a 401k value of $1.3 million. Thereafter, Hahn tried to get Higgins to agree on an asset valuation date for the property division, but Higgins never responded. She timely provided all information requested by Higgins. Prior to the mediation and despite numerous requests, she did not receive updated financial figures from Higgins. The mediation occurred without an agreed-upon valuation date; the parties were in separate rooms between which the mediator moved. Hahn estimated that ninety percent of the mediation time was

spent arguing over the disposition of personal property, which the mediator found frustrating.

¶8     Within the Higgins-supplied materials the mediator delivered to Hahn to review was Higgins's valuation of her 401k at $1.1 million, which was the value on December 31, 2018.   During mediation, Hahn raised with the mediator her request for a valuation date, and she assumed that the mediator conveyed that request to Higgins.   The mediator returned and conveyed that Higgins wanted to use the numbers stated on the spreadsheet Higgins brought to the mediation, Exhibit R14.   Exhibit R14 shows "Compromise Values" as of July 31, 2011[3] and lists the value of the 401k as $1.1 million.   Hahn claimed that toward the end of the mediation, she gave the mediator a July 31, 2019 401k balance of $1.4 million, so the mediator knew that the 401k valuation on Higgins's spreadsheet was not up to date.[4]   There was no discussion about adjusting 401k values, and Higgins insisted on using the numbers on Exhibit R14.   After the mediation, Hahn received updated figures from Higgins, but the figures were still incomplete.   She revealed everything in her financial disclosure statement during the proceedings; Higgins did not.

¶9     As a result of the mediation, the parties had a property division and maintenance plan.   Hahn testified that she compromised her claims via mediation, and the marital settlement agreement contains the parties' acknowledgement that they were compromising disputed claims.   A post-mediation letter from Higgins's

---

[3]  We assume that the year 2011 is a typographical error.

[4]  Hahn provided the 401k's value as of July 31, 2019 ($1.4 million) because that matched the only valuation date Higgins had provided for his assets.

4

counsel confirmed that the mediator was using his spreadsheet, Exhibit R14. A post-mediation spreadsheet (Exhibit R9) showed the same value for the 401k as Exhibit R14: $1.1 million. Higgins's counsel drafted the marital settlement agreement. Higgins's counsel admitted that he had the $1.3 million valuation in his possession, but he still used the lower $1.1 million valuation in the materials leading up to the marital settlement agreement. Hahn did not know the value of her 401k at the time of mediation or through entry of the judgment of divorce, and she had no actual knowledge that the value increased from the last value she provided to Higgins and the mediator.

¶10    At the divorce hearing, Higgins asked if there was a substantial change to the 401k balance. Because he did not specify a balance or valuation date as a reference point, Hahn thought Higgins's reference point was the $1.4 million value she contends she provided at mediation. Hahn did not file updated valuations with the court because Higgins was not updating his valuations with the court. At her counsel's request, Hahn provided the $1.1 million 401k valuation to Delphi Consulting Group for its use in preparing a QDRO because that figure matched the 401k valuation on Exhibits R14 and R9, the spreadsheets from the mediation.

¶11    In denying Higgins's WIS. STAT. § 806.07(1)(c) motion to reopen the judgment of divorce, the circuit court recognized that whether to grant the motion was within its discretion. The court found Hahn more credible than Higgins because his "recollection [and clarity] was poor at best." The court found that Hahn clearly recalled events, and "her testimony was very sharp." The court found that the mediator did not receive Hahn's updated 401k value of $1.4 million. Nevertheless, the court found that Higgins did not show that Hahn engaged in an intentional act to deprive him of information relating to the value of

her 401k account or to misrepresent her financial condition to Higgins to gain an advantage in the divorce. The court found that Hahn was acting in the context of the "tit for tat" approaches the parties took toward disclosing financial information to each other. Higgins did not establish that Hahn knew of the $1.5 million valuation, which was disclosed postjudgment, and there were several 401k valuations floating around in the case, including the $1.1 million valuation on Higgins's spreadsheet (even though Higgins's counsel was aware of a subsequent $1.3 million valuation that was not inserted into the spreadsheet). The court did not find any extraordinary circumstances that warranted reopening the property division.

¶12    WISCONSIN STAT. § 806.07(1)(c) provides:

(1)  On motion and upon such terms as are just, the court …
may relieve a party or legal representative from a judgment,
order or stipulation for the following reasons:

….

(c) Fraud, misrepresentation, or other misconduct of an
adverse party;

¶13    We review a circuit court's decision denying a WIS. STAT. § 806.07 motion for a misuse of discretion. *Franke v. Franke*, 2004 WI 8, ¶54, 268 Wis. 2d 360, 674 N.W.2d 832. We will affirm the circuit court's discretionary decision if "the circuit court 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'" *Id.* (citation omitted). "We sustain a [circuit] court's findings of fact unless they are clearly erroneous." *Klinefelter v. Dutch*, 161 Wis. 2d 28, 33, 467 N.W.2d 192 (Ct. App. 1991). The circuit court "is the ultimate arbiter of the credibility of the witnesses and the weight to be given to

6

each witness's testimony." ***State v. Peppertree Resort Villas, Inc.***, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345 (citation omitted).

¶14 The circuit court found credible Hahn's testimony relating to her disclosure of the value of her 401k. Higgins does not confront the circuit court's findings based on its credibility determinations and essentially argues that other parts of the record support his view that Hahn failed to disclose such that the circuit court should have granted his WIS. STAT. § 806.07 motion to reopen. This court does not reweigh the evidence, make credibility determinations, or find facts.[5] *See **Dickman v. Vollmer***, 2007 WI App 141, ¶14, 303 Wis. 2d 241, 736 N.W.2d 202; ***Kovalic v. DEC Int'l***, 186 Wis. 2d 162, 172, 519 N.W.2d 351 (Ct. App. 1994) (this court does not find facts). The circuit court's findings of fact based on its credibility determinations are not clearly erroneous, and they preclude relief under § 806.07(1)(c).

¶15 In the circuit court, Higgins sought relief under WIS. STAT. § 806.07(1)(c) on the grounds of "Fraud, misrepresentation, or other misconduct[.]" This is the conduct the circuit court found Higgins did not prove. However, on appeal, Higgins argues that Hahn violated her WIS. STAT. § 767.127(5)[6] duty to disclose her financial condition, but he does not establish for

---

[5] For this reason, we do not discuss Higgins's argument that his credibility was not relevant to the circuit court's decision.

[6] WISCONSIN STAT. § 767.127(5) provides:

(continued)

this court by record citation that he relied upon this statute in the circuit court. Additionally, Higgins offers no authority for the proposition that a violation of § 767.127(5), if such occurred, necessarily proves his § 806.07(1)(c) claim. We will not look for legal authority to support a party's argument. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) ("We cannot serve as both advocate and judge.").

¶16 We reject Higgins's view that this is a *Franke* case. In *Franke*, the circuit court found that the husband did not fully disclose his assets. *Franke*, 268 Wis. 2d 360, ¶58. Higgins overlooks the circuit court's finding that he did not establish that Hahn knew of the $1.5 million 401k valuation at the time of mediation. Furthermore, Higgins used an outdated $1.1 million valuation for the 401k in his spreadsheets, he executed the marital settlement agreement even though he and his counsel knew that the last valuation they had for the 401k was $1.3 million, and he never responded to Hahn's request to set a valuation date for marital assets. We observe that even though he seeks relief from the property division on the grounds that Hahn did not update her 401k's value, Higgins admits on appeal that he did not update his financial disclosures prior to entry of the judgment of divorce.

---

> If a party intentionally or negligently fails to disclose information required by sub. (1) and as a result any asset with a fair market value of $500 or more is omitted from the final distribution of property, the party aggrieved by the nondisclosure may at any time petition the court granting the annulment, divorce, or legal separation to declare the creation of a constructive trust as to all undisclosed assets…. The court shall grant the petition upon a finding of a failure to disclose assets as required under sub. (1).

¶17    We affirm the circuit court's denial of Higgins's WIS. STAT. § 806.07(1)(c) motion.

*By the Court.*—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.